187 P.3d 243 (2008)
UNIVERSITY OF WASHINGTON MEDICAL CENTER, Respondent,
v.
WASHINGTON STATE DEPARTMENT OF HEALTH, Petitioner.
No. 80264-5.
Supreme Court of Washington, En Banc.
Argued May 8, 2008.
Decided July 10, 2008.
*244 Peter Scott Ehrlichman, Brian William Grimm, Dorsey & Whitney LLP, Seattle, Richard Arthur McCartan, Alan D. Copsey, Attorney General's Office, Olympia, for Petitioner.
Kathleen Dell Benedict, Narda D. Pierce, Benedict Garratt Pond & Pierce, Olympia, for Respondent.
CHAMBERS, J.
¶ 1 Under Washington law, certain medical services can be offered only by holders of a "certificate of need" issued by the Washington State Department of Health. We are asked to decide whether the department improperly gave Swedish Medical Center a certificate of need to provide liver transplants. We conclude it did not and reinstate the health law judge's order approving the certificate.

BACKGROUND
¶ 2 In 1979, our legislature accepted Congress's invitation to regulate the number of healthcare providers entering the market and enacted the State Health Planning and Resources Development Act, chapter 70.38 RCW. Because of this, certain types of health care facilities and programs (including liver transplant programs) may be opened only if the department first issues a certificate of need. RCW 70.38.105; WAC 246-310-200, -210. Substantively, before a certificate can be granted, the department considers the need for the proposed program, alternative ways to provide the same health benefits, the financial feasibility of the proposed program, and the impact on existing training programs, among other things. RCW 70.38.115(2); see also WAC 246-310-210 through -240. Procedurally, the department must notify certain interested parties (such as those providing competing services), take public comment, and, if requested, hold a public hearing. RCW 70.38.115(9), (10); WAC 246-310-160, -180. The public comment period is generally limited to 45 days, with the last 10 days reserved for rebuttal from the applicant and certain interested parties. WAC 246-310-160(1)(a). The department is to act within 90 days on applications *245 (45 days after the close of the public comment period), though extensions are possible. RCW 70.38.115(8); WAC 246-310-160(1), (2). An unsuccessful applicant or other interested party can appeal the department's decision, first to a health law judge for a de novo review, then to the judicial system. WAC 246-310-610; RCW 34.05.514.
¶ 3 In June 2003, Swedish applied for a certificate of need to establish a liver transplant program. The University of Washington Medical Center (UWMC) objected and asked for a public hearing, where it argued stridently against the certificate. For many years, the UWMC has operated the only adult liver transplant program in the five state "WWAMI" area (Washington, Wyoming, Alaska, Montana, and Idaho).[1] The UWMC submitted considerable evidence to support its contention that there was no need for a second liver transplant program in Washington State.
¶ 4 After the public hearing, Swedish and the UWMC submitted rebuttal evidence on November 24, 2003, the last day authorized by law, and the department formally closed the evidentiary record. There is no established procedure for surrebuttal. In 2004, the department granted Swedish a certificate of need. The UWMC appealed. Because Health Law Judge Caner was reviewing the department's initial decision, she substantially restricted the new evidence the parties could present to evidence directly relevant to the record upon which the department granted the certificate of need. On that evidence, in 2005, Judge Caner affirmed the department's decision.
¶ 5 The UWMC sought judicial review. In 2006, Thurston County Superior Court Judge Tabor reversed Judge Caner on procedural grounds. Judge Tabor concluded that Swedish had submitted a new argument in rebuttal, and that Judge Caner's evidentiary rulings had improperly prevented the UWMC from being allowed to respond to it.
¶ 6 On remand, Judge Caner expanded the scope of admissible evidence to evidence "that existed as of December 31, 2003." Clerk's Papers at 290. In effect, she reopened the administrative record another five weeks. Among other things, this meant that Judge Caner would not hear evidence the UWMC sought to submit relating to changes in the way donor livers were matched nationwide, which would have, it asserts, undercut other factual determinations of the department relating to the local need for a second program. It also meant that Judge Caner would not hear evidence about the UWMC's plans to add a second liver transplant fellow. The new fellow could potentially impact both the need for a second liver transplant center and the impact of a second center on the UWMC's training program. It appears UWMC had not raised its plans for an additional liver transplant fellow during the public comment period. Several of the UWMC's witnesses testified at the remand hearing that the evidence they wished to present did not comply with the evidentiary cutoff, and, essentially, sat down without testifying. After a hearing that had been scheduled for three days but took only one, Judge Caner affirmed the certificate of need. She specifically found the area would support two liver transplant programs, patients would benefit from having a choice, and that both liver transplant programs would benefit from collegial competition. Once again, the UWMC appealed, arguing that Judge Caner had erred by refusing to hear the post-2003 evidence it wished to submit and that the department was substantively wrong that the area needs another liver transplant center.
¶ 7 The superior court reversed again, finding that Judge Caner abused her discretion by setting the evidentiary cutoff so far back in time. We granted direct review.

ANALYSIS
¶ 8 Justice Brachtenbach briefly summarized the standards of review in certificate of need cases. We cannot improve upon his words:

*246 1. We review the entire administrative record.
2. The agency decision is presumed correct and the challenger bears the burden of proof.
3. We do not retry factual issues and accept the administrative findings unless we determine them to be clearly erroneous, that is, the entire record leaves us with a definite and firm conviction that a mistake has been made. Important here is the corollary principle that the existence of credible evidence contrary to the agency's findings is not sufficient in itself to label those findings clearly erroneous.
4. The error of law standard permits this court to substitute its interpretation of the law for that of the agency, but we accord substantial deference to the agency's interpretation, particularly in regard to the law involving the agency's special knowledge and expertise.
5. To find an agency's decision to be arbitrary and capricious we must conclude that the decision is the result of willful and unreasoning disregard of the facts and circumstances.
Providence Hosp. of Everett v. Dep't of Soc. & Health Servs., 112 Wash.2d 353, 355-56, 770 P.2d 1040 (1989) (citations omitted) (citing Renton Educ. Ass'n v. Pub. Empl. Relations Comm'n, 101 Wash.2d 435, 440, 680 P.2d 40 (1984); In re All-State Constr. Co., 70 Wash.2d 657, 659, 425 P.2d 16 (1967); Franklin County Sheriff's Office v. Sellers, 97 Wash.2d 317, 325, 646 P.2d 113 (1982); Keppeler v. Bd. of Trs., 38 Wash.App. 729, 732, 688 P.2d 512 (1984); Barrie v. Kitsap County, 93 Wash.2d 843, 850, 613 P.2d 1148 (1980)). Thus, the challenger has the burden of showing the department misunderstood or violated the law, or made decisions without substantial evidence. We do not reweigh the evidence. Providence, 112 Wash.2d at 360, 770 P.2d 1040.

1. THE EVIDENTIARY CUTOFF
¶ 9 The threshold question before the court is whether Judge Caner abused her discretion when she imposed the December 31, 2003 evidentiary cutoff in the remand hearing. The department argues that Judge Caner appropriately exercised her discretion to exclude irrelevant evidence. See RCW 34.05.452(1) ("The presiding officer may exclude evidence that is irrelevant, immaterial, or unduly repetitious."). At oral argument, the department suggested that the decision to grant a certificate of need is made on a "snapshot" of facts around the time the application is filed. The UWMC responds that the Court of Appeals has recently held that the health law judge is the final administrative decision maker. DaVita, Inc. v. Dep't of Health, 137 Wash.App. 174, 181, 151 P.3d 1095 (2007). It argues that implicit in its right to a de novo hearing before the health law judge is the right to present existing evidence that supports its case, even if that evidence did not exist when the department's "snapshot" was taken.
¶ 10 Nothing in the rules or the statutes specifically addresses the appropriate record before the health law judge. Instead, the law leaves that question to the department by rule or to the health law judge by rulings guided by the Rules of Evidence. See RCW 34.05.452 (evidence at administrative review hearings); RCW 70.38.115 (procedures for certificate of need review hearings). Under the Rules of Evidence, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." ER 103(a). We review a trial judge's evidentiary rulings for abuse of discretion. State v. Myers, 133 Wash.2d 26, 34, 941 P.2d 1102 (1997).
¶ 11 Both the statutes and the administrative rules clearly contemplate that the decision will be made quickly; ideally, 90 days from the application's filing. RCW 70.38.115(8); WAC 246-310-160(1). Requiring the health law judge to admit evidence created long after this period of time would undermine the statutory objective of expeditious decision making and prevent meaningful public input on that evidence. A request for an adjudicative hearing does not begin the application process anew; the adjudicative proceeding is part of the entire certificate of need petition process established by chapter 70.38 RCW.
*247 ¶ 12 Further, de novo review is a type of review, not an evidentiary standard. See, e.g., Davis v. Baugh Indus. Contractors, Inc., 159 Wash.2d 413, 416, 150 P.3d 545 (2007). The law gives considerable discretion to administrative law judges to determine the scope of admissible evidence. E.g., Port of Seattle v. Pollution Control Hearings Bd., 151 Wash.2d 568, 597, 90 P.3d 659 (2004). It was within the sound discretion of the health law judge to admit, or not admit, evidence that came into existence after the close of the public comment period. We conclude that Judge Caner did not abuse her discretion in setting the evidentiary cutoff when she did.

2. SUBSTANTIAL EVIDENCE
¶ 13 Next, we must determine whether substantial evidence supporting the department's decision can be found in the record. See RCW 34.05.570(3)(e). The UWMC bears the burden of establishing that the agency's factual findings are erroneous, and the court will review the evidence in the light most favorable to "`the party who prevailed in the highest forum that exercised factfinding authority,'" in this case, Swedish and the department. City of Univ. Place v. McGuire, 144 Wash.2d 640, 652, 30 P.3d 453 (2001) (quoting State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce, 65 Wash. App. 614, 618, 829 P.2d 217 (1992)).
¶ 14 RCW 70.38.115(2)(d) requires the department to "consider the application in terms of its impact on existing and proposed training programs." The regulations go further, requiring the department to find that "[t]he project will not have an adverse effect on health professional schools and training programs" before a certificate of need may be granted. WAC 246-310-210(4). Essentially, the UWMC presents two intertwined challenges. It contends that substantial evidence does not support the conclusion that there is an unmet need for liver transplants in this area and that the addition of a second program will have an adverse impact on the UWMC training program because it will reduce the number of training opportunities for the UWMC liver transplant fellows.
¶ 15 The UWMC challenges the department and Judge Caner's decision that there was unmet need for liver transplants in this area. Both the department and Judge Caner relied mostly on statistical evidence showing that the transplant rates and wait lists at the time the application was filed were considerably smaller than those in other regions. In the WWAMI region, the UWMC decides who is on or off the liver transplant list, though patients may seek to be on a wait list elsewhere. Nationally, in 2003, 60 people per million were on the liver transplant wait list. Only 14 people per million were on the list in the WWAMI area. This suggested that the UWMC has a conservative criteria for its wait list. There was also evidence that our state's rate of death from liver disease is disproportionately high. We conclude that substantial evidence supports the health law judge's finding that there was unmet need and that a second program will not have an adverse impact on the UWMC's training program by reducing the number of training opportunities.
¶ 16 The UWMC largely contends that the statistical evidence simply does not support the conclusion that our region is underserved. It produced evidence that comparatively few individuals had actually left the state for liver transplants. It notes that Swedish retreated somewhat from its initial position that the statistical evidence demonstrated that there was current unmet local need for liver transplants and started couching its arguments in terms of "expected" patients who "were never given the opportunity to receive a transplant within Washington and did not have the knowledge and/or resources to seek alternative opinions." 1st Administrative Record (AR) at 1634.[2] However, *248 while Swedish did arguably back away from its initial position, that does not demonstrate a lack of substantial evidence supporting the department and the health law judge's final decision.
¶ 17 While the UWMC offered its own evidence, which could have reasonably led to a different decision, we do not retry factual issues, and nothing the UWMC has provided establishes that the department's decision that there would be enough liver transplants needed in the future to support both programs without having an adverse effect on the UWMC was clearly erroneous, as required for reversal under Providence, 112 Wash.2d at 355-56, 770 P.2d 1040. We cannot say that the health law judge's decision was clearly erroneous or that substantial evidence does not support her conclusion.

3. THE APPLICATION
¶ 18 We turn now briefly to the UWMC's challenge to Swedish's certificate of need application itself. The UWMC charges that the application was fatally flawed because it did not adequately address the impact of a second liver transplant program on the UWMC's training program. Instead, Swedish simply acknowledged that the UWMC did liver transplants and presented statistical evidence that tended to show that enough patients were either leaving the state for liver transplants or doing without to support a second program.
¶ 19 As the department points out, chapter 70.38 RCW is mostly directed toward the department and what the department must find before it can grant or deny a certificate of need. See, e.g., RCW 70.38.115 (setting forth the standards). The department is required to consider whether granting a certificate of need will have an adverse impact on other training programs. RCW 70.38.115(2)(d) ("In the case of health services to be provided, . . . [t]he department shall consider the application in terms of its impact on existing and proposed institutional training programs for . . . surgery and medicine at the student, internship, and residency training levels."); see also WAC 246-310-210 (elaborating on the basis for the department's decision). The applicant is not in a position to meaningfully evaluate the impact of a program on a potential competitor. The wise applicant should attempt to show the impact on existing training programs, but it is not fatal to the application that the applicant does not have detailed information on that impact.

CONCLUSION
¶ 20 We hold that Judge Caner did not commit reversible error when she set the evidentiary cutoff, that substantial evidence supports her decision, and that Swedish's initial application was not fatally flawed. Accordingly, we reverse the superior court and reinstate the certificate of need.
ALEXANDER, C.J., C. JOHNSON, MADSEN, SANDERS, OWENS, FAIRHURST, J. JOHNSON, and STEPHENS, JJ., concur.
NOTES
[1] These five states have a cooperative agreement in the health care arena under which the UWMC serves as the regional medical school for all.
[2] For example, in its application, Swedish illustrated the unmet need thus:

Our forecast methodology indicates that about 111 Washington residents received liver transplants in the year 2001. (Appendix C, Table 2) Given there are precise statistics compiled on the number of liver transplant surgeries provided in Washington hospitals, we know, for example, that in 2001, the UW provided 75 liver transplants, and of this figure, 64 were performed on in-state residents. Children's provided 8 liver transplants on Washington residents. This leaves 39 (111-64-8) residents who apparently out-migrated for liver transplant care. This is a 35.1% (39/111) out-migration figure. We think that is a very high figure  too high for such a complex service with significant pre- and post-transplant care requirements.
1st AR at 1043.