[No. 66304-6-I.    Division One.    February 21, 2012.]

KING COUNTY PUBLIC HOSPITAL DISTRICT NO. 2 ET AL.,
*Respondents*, v. THE DEPARTMENT OF HEALTH ET AL.,
*Appellants.*

*Jeffrey A.O. Freimund* and *Kathleen D. Benedict* (of *Freimund Jackson Tardoff & Benedict Garratt PLLC*), for appellant Odyssey Healthcare.

*Robert M. McKenna, Attorney General*, and *Richard A. McCartan, Assistant*, for appellants Department of Health and Mary Selecky.

*Bruce W. Megard, Jr.* (of *Bennett Bigelow & Leedom PS*), for respondents Hospice of Seattle and Providence Hospital & Home Care.

*James S. Fitzgerald* and *Gregory A. McBroom* (of *Livengood Fitzgerald & Alskog PLLC*), for respondent King County Public Hospital District No. 2.

¶1 SPEARMAN, J. — We are asked to determine whether a health law judge (HLJ) acted arbitrarily and capriciously in entering a final order approving a settlement between the Department of Health (Department) and Odyssey Healthcare. The central component of the settlement was the Department's approval of Odyssey's 2006 certificate of need (CN) application to provide hospice care in King County. Evergreen and other competing providers filed a petition for review of the HLJ's order in superior court. The superior court reversed the HLJ's order on the grounds that (1) Evergreen had not received a full adjudicative hearing, (2) the Department acted arbitrarily and capriciously in settling Odyssey's federal lawsuit by granting Odyssey's 2006 CN application based on evidence obtained long after the record for that application was closed, and (3) the HLJ acted arbitrarily and capriciously in adopting the settlement without finding that Odyssey had met all four of the CN criteria. The court revoked the CN and remanded to the HLJ. Odyssey appeals. We hold that the HLJ's approval of the settlement was not arbitrary and capricious for the reasons asserted by Evergreen on appeal. We reverse and remand.

## FACTS

¶2 In Washington, hospice care can be offered only by holders of CNs, which are nonexclusive licenses. RCW 70.38.025(6); RCW 70.38.105. To obtain a CN, a provider's proposal must meet four criteria: (1) need for the proposed program, (2) financial feasibility of the program, (3) structure and process of care, and (4) cost containment. WAC 246-310-210 through -.240. The CN process involves an application by a provider; notification to certain interested parties, such as competitors, and an opportunity for public comment (including a hearing, if requested); and a decision by the Department. *See* RCW 70.38.115. An applicant denied a CN has the right to an adjudicative proceeding. RCW 70.38.115(10)(a). If the Department wishes to settle

with an applicant prior to the conclusion of the adjudicative proceeding, the Department must inform competitors and afford them an opportunity to comment, in advance, on the proposed settlement. RCW 70.38.115(10)(c).

¶3 In October 2006, Odyssey filed CN applications to offer hospice services in King, Snohomish, and Pierce Counties. This was Odyssey's second attempt to obtain CNs for these counties; its 2003 applications had been denied.[1] The Department denied the 2006 applications in August 2007. Odyssey requested adjudicative proceedings to appeal the denials before an HLJ. Evergreen's request to intervene was granted. The HLJ, John F. Kuntz, granted various stays, one due to Odyssey's plan to file a federal lawsuit. On April 7, 2009, Odyssey filed a lawsuit against the Department in federal district court, alleging violations of the Sherman Anti-Trust Act, 15 U.S.C. § 1; the dormant commerce clause, U.S. Const. art. I, § 8, cl. 3; and 42 U.S.C. § 1983.[2]

¶4 The Department and Odyssey entered into settlement negotiations to resolve the federal lawsuit and the adjudicative proceedings. On September 25, 2009 they reached an agreement, memorialized in two documents: (1)

---

[1] The Department had denied Odyssey's 2003 applications because, among other reasons, the methodology for the "need" criterion under WAC 246-310-290 showed a surplus of hospice agencies in those counties. Odyssey challenged the Department's decision, which was eventually affirmed by this court in *Odyssey Healthcare Operating B, LP v. Dep't of Health*, 145 Wn. App. 131, 185 P.3d 652 (2008). We stated in a footnote:

> Odyssey's contention that the WAC 246-310-290(7) methodology contains significant flaws is not without merit. But because the methodology is ambiguous, we must defer to the interpretation of the Department as the agency responsible for the methodology's administration and enforcement. The judicial appeal process is not the appropriate venue for addressing Odyssey's arguments about the inherent defects in WAC 246-310-290(7)'s methodology. Instead, Odyssey should raise its concerns through administrative rule making avenues.·

*Id.* at 145 n.6 (citation omitted). Accordingly, Odyssey petitioned for rule making in October 2008, requesting the Department to correct alleged flaws in the methodology for assessing need. The Department denied the petition.

[2] The complaint also named the secretary of health and three other Department of Health employees in their individual capacities.

a settlement to resolve the federal lawsuit and (2) a proposed settlement and stipulation to resolve the adjudicative proceeding. The settlement in the federal lawsuit required the parties to enter into the settlement and stipulation in the adjudicative proceeding.[3] The settlement also contained a release provision to ensure that the Department would act in good faith in deciding whether to present the proposed settlement in the adjudicative proceeding to the HLJ and support the HLJ's approval of it.[4]

¶5 Under the proposed settlement in the adjudicative proceeding, the parties proposed approval of Odyssey's CN application based on more recent data showing that need now existed for a new hospice in King County (2008 methodology).[5] The Department agreed to provide appropriate entities notice and an opportunity to comment on the

---

[3] Other terms of the federal settlement were that (1) Odyssey would dismiss its federal lawsuit within two days of the parties' signing of the stipulation; (2) no later than May 1, 2010, the Department would initiate rule making under chapter 34.05 RCW to consider whether to amend WAC 246-310-290 and to allow Odyssey to participate in advising the Department on amending the rule; (3) the Department would pay Odyssey $10,000 as consideration for all of its claims, to resolve the federal lawsuit without further litigation expense.

[4] The provision stated:

Nothing in this Agreement prohibits Odyssey from bringing a new lawsuit against the State of Washington, the Department of Health, or any of its employees or former employees, related to the denial of a Certificate of Need application, including a denial by the Health Law Judge of the King County Certificate of Need awarded under paragraph 2 of the proposed Settlement and Stipulation in the pending adjudicative proceeding before the Department of Health. However, in such case, with one exception, Odyssey is precluded from seeking damages, costs, or attorneys' fees related to any event allegedly occurring prior to the date of signing of this Settlement. This preclusion will not apply if the Certificate of Need Program, pursuant to Paragraph 4 of the attached Stipulation and Settlement, makes a decision not to present the Stipulation and Settlement to the Health Law Judge for approval of the King County application, and in subsequent litigation, Odyssey proves that the decision was made in bad faith. No showing of bad faith is required in order for Odyssey to seek prospective injunctive relief in any future lawsuit.

[5] The proposed settlement stated that since Odyssey's King County CN application had been denied, the Department, in 2008, conducted a survey of existing King County providers based on services offered in 2007. Applying the need methodology contained in WAC 246-310-290, the data showed a current need for two additional hospice agencies in King County.

proposed settlement. The proposed settlement stated that the Department would then "(i) present the Stipulation to the Health Law Judge for entry of an Order approving the proposed settlement and granting the King County application . . . , or (ii) notify Odyssey of its decision not to present the Stipulation to the Health Law Judge . . . ." Odyssey agreed to withdraw its request for adjudicative proceedings to appeal the denials for CNs for Pierce and Snohomish Counties.

¶6 On September 29, 2009, the Department issued a "Notice of Possible Settlement and Opportunity to Comment," announcing that the Department and Odyssey proposed a settlement that would approve of Odyssey's 2006 CN application for King County. The notice requested comment within 14 days. The Department received comments from several competing providers, including Evergreen and the other appellants, opposing approval of a CN for Odyssey. The competitors contested the Department's use of the 2008 methodology, arguing that the Department could not use data obtained 15 months after its decision in order to grant the 2006 application. They contended that the Department properly evaluated Odyssey's application in August 2007 using the same methodology upheld by this court in the appeal of Odyssey's 2003 CN application and that a deviation would require rule making. They also claimed that the Department failed to include some approved hospice providers and artificially extended the forecast horizon applicable for the need methodology. Finally, they asserted that the Department failed to evaluate how Odyssey satisfied the non-need criteria.

¶7 Providence renewed its motion to intervene, and Swedish and Franciscan also filed motions to intervene. The HLJ granted the motions, but only for the limited purpose of submitting written evidence and legal argument on the proposed settlement. The HLJ stated:

> The only issue currently before the Presiding Officer is whether to accept the Proposed Settlement in the event it is

offered by the Program. There are no issues regarding discovery, cross-examination, or other participation in the adjudicative proceeding at this time. Limiting intervention to the submission of comments and argument on the September 2009 Proposed Settlement is appropriate at this time. The plain language of RCW 70.38.115(10)(c) requires nothing more.

¶8 On October 30, 2009, the Department submitted its proposed settlement to the HLJ and recommended approval of Odyssey's CN application. The Department noted that the need criterion was the only contested issue in the approval of Odyssey's 2006 CN application and that the competitors did not contest the non-need criteria. It stated that the application failed the three other criteria *only* because Odyssey had not demonstrated need" and that "the Program would have approved the application had Odyssey demonstrated need." The Department then analyzed why the need criterion was met based on the 2008 methodology. The competitors filed responses opposing the proposed settlement, arguing that it contravened CN laws and departmental policy.

¶9 The HLJ approved the proposed settlement and the Department's proposed order to grant Odyssey's CN application for King County, issuing a final order on December 8, 2009. The HLJ found:

For reasons stated by the Program in its evaluation and settlement proposal:

(a) Odyssey's hospice application for King County meets the requirements of WAC 246-310-210, 246-310-220, 246-310-230, and 246-310-240; and

(b) In the exercise of discretion, the Program's 2008 WAC 246-310-290 methodology – showing "need" for an additional hospice agency in King County in 2009 – may be used in deciding that need exists for Odyssey's proposed hospice in King County . . . .

The HLJ held (1) there was proper notice and opportunity to comment on the proposed settlement and the proposed

settlement was properly presented to the HLJ; (2) Odyssey's hospice application met all four criteria for the issuance of a CN under RCW 70.38.115(2) and WAC 246-310--210 through -240; (3) the Department, in an "exercise of discretion," could use the 2008 methodology to decide "that need exists for Odyssey's proposed hospice in King County"; and (4) Odyssey's requests for adjudicative proceedings to challenge the denials for CNs in Pierce and Snohomish Counties would be voluntarily dismissed. The HLJ ordered that "[w]ith the stated conditions in the proposed settlement," Odyssey's CN application for a hospice agency in King County was approved.

¶10 The competitors filed a petition for review of the HLJ's final order in superior court on January 7, 2010. On January 13, the Department issued a CN to Odyssey. On October 29, the superior court reversed the HLJ's final order, entering findings of fact and the following conclusions of law:

1. RCW 70.38.115(10)(c) authorizes the Department to settle with an applicant prior to the conclusion of the adjudicative proceeding. However, it is clear that the intent of the Legislature in enacting this provision was not to allow a "settlement" to circumvent established evaluation procedures or to modify a decision of the Department without an adjudicative hearing, especially if the primary settlement arose from an entirely separate lawsuit and proceeding.

2. The Department's decision to settle the Federal Lawsuit by granting Odyssey a CN in King County under the guise of "special circumstance" and based upon its 2009 methodology long after the record was closed on a 2006 application, was arbitrary and capricious.

3. The Health Law Judge's subsequent summary adoption of the settlement agreement without an adjudication or finding that Odyssey had actually met all four of the CN criteria was similarly arbitrary and capricious and thus, error as a matter of law.

4. The request on judicial review to reverse the Final Order Approving Settlement and Granting Odyssey's King County

Hospice Application, dated December 8, 2010 (the "Final Order") should be granted.

5. The Department's issuance of Certificate of Need #1416 to Odyssey for establishing a hospice agency in King County based upon the Final Order and the Department's settlement should be revoked.

6. The matter should be remanded to the Department's Health Law Judge for a determination, based on the applicable law and the relevant evidence available at the time the record was open, whether or not Odyssey's CN application satisfied all of the applicable criteria for approval of its 2006 application.

Odyssey appeals, assigning error to all of the superior court's conclusions of law. The Department submits briefing to defend its final order.[6]

## DISCUSSION [7]

¶11 In reviewing the HLJ's final order, we "sit in the same position as the superior court, applying [Washington's

---

[6] The Department does not agree with all of Odyssey's arguments, but agrees that the superior court erred in overturning the approval of Odyssey's application for a CN.

[7] The Department proposed to settle the adjudicative proceeding with Odyssey pursuant to RCW 70.38.115(10)(c), which provides:

If the department desires to settle with the applicant prior to the conclusion of the adjudicative proceeding, the department shall so inform the health care facility or health maintenance organization and afford them an opportunity to comment, in advance, on the proposed settlement.

The statute does not expressly require a proposed settlement to be approved by an HLJ. Nonetheless, the Department sought the HLJ's approval of the settlement agreement. Nor does the statute expressly require the HLJ to make findings that a proposed settlement agreement resulting in the issuance of a CN is in compliance with RCW 70.38.115(2) and WAC 246-310-210 through .240. Nonetheless, the Department requested the HLJ to make findings that the issuance of the CN was consistent with the statutory criteria and that the Department's use of the 2008 methodology was proper, which the HLJ did. The HLJ also conducted a hearing prior to its determination to approve the proposed settlement, although RCW 70.38.115(10) does not expressly require such a hearing. On appeal, neither party addresses these procedural issues or assigns error to them. We therefore limit our review to the HLJ's final order and the narrow questions of whether the HLJ's factual findings are clearly erroneous, whether the HLJ committed an error of law, and whether approval of the settlement agreement was arbitrary and capricious.

Administrative Procedure Act, chapter 34.05 RCW,] to the record before the agency." *DaVita, Inc. v. Dep't of Health*, 137 Wn. App. 174, 180, 151 P.3d 1095 (2007) (citing *Towle v. Dep't of Fish & Wildlife*, 94 Wn. App. 196, 203, 971 P.2d 591 (1999)). The standard of review for CN cases specifically is stated as follows:

"1. We review the entire administrative record.

"2. The agency decision is presumed correct and the challenger bears the burden of proof.

"3. We do not retry factual issues and accept the administrative findings unless we determine them to be clearly erroneous, that is, the entire record leaves us with a definite and firm conviction that a mistake has been made. Important here is the corollary principle that the existence of credible evidence contrary to the agency's findings is not sufficient in itself to label those findings clearly erroneous.

"4. The error of law standard permits this court to substitute its interpretation of the law for that of the agency, but we accord substantial deference to the agency's interpretation, particularly in regard to the law involving the agency's special knowledge and expertise.

"5. To find an agency's decision to be arbitrary and capricious we must conclude that the decision is the result of willful and unreasoning disregard of the facts and circumstances."

*Univ. of Wash. Med. Ctr. v. Dep't of Health*, 164 Wn.2d 95, 102-03, 187 P.3d 243 (2008) (*UWMC*) (quoting *Providence Hosp. of Everett v. Dep't of Soc. & Health Servs.*, 112 Wn.2d 353, 355-56, 770 P.2d 1040 (1989)). Thus, the challenger has the burden of showing the department misunderstood or violated the law, or made decisions without substantial evidence. We do not reweigh the evidence. *Id.*

¶12 The scope of review under the arbitrary and capricious standard "is very narrow" and " 'highly deferential' " to the agency, and the party challenging an agency decision carries " 'a heavy burden.' " *Alpha Kappa Lambda Fraternity v. Wash. State Univ.*, 152 Wn. App. 401, 418-22, 216 P.3d 451 (2009) (quoting *ARCO Prods. Co. v. Utils. &*

*Transp. Comm'n,* 125 Wn.2d 805, 812, 888 P.2d 728 (1995); *Pierce County Sheriff v. Civil Serv. Comm'n,* 98 Wn.2d 690, 695, 658 P.2d 648 (1983)). " '[W]here there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.' " *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n,* 148 Wn.2d 887, 904, 64 P.3d 606 (2003) (alteration in original) (internal quotation marks omitted) (quoting *Rios v. Dep't of Labor & Indus.,* 145 Wn.2d 483, 501, 39 P.3d 961 (2002)).

¶13 Evergreen contends the HLJ's final order was arbitrary and capricious because (1) in approving Odyssey's 2006 CN application, the Department relied on evidence not available until long after the application was made; (2) notwithstanding the use of the 2008 methodology, the Department did not conduct any analysis of the three non-need criteria for a CN application; and (3) notwithstanding the use of the 2008 methodology, the need criterion was not met.[8] We consider these arguments in turn.

## Considering 2008 methodology

¶14 Evergreen contends that in approving Odyssey's CN application, the Department impermissibly relied on the 2008 methodology, evidence that was not available until two years after the original application was made and more than a year after the record closed. Evergreen claims this violated the Department's general policy—as explained in a memorandum from the Department's secretary and in the Department's answer in the federal lawsuit—and case law,

---

[8] While one of the bases of the superior court's reversal of the HLJ's order was that Evergreen was not accorded a full adjudicatory proceeding, Evergreen does not rely on this basis on appeal. Evergreen asserts in a footnote that although the court need not reach the constitutional issue, the Department violated procedural due process by failing to solicit comments in advance of the federal settlement and depriving Evergreen of its right to challenge the decision in an adjudicative proceeding. We do not consider this de minimis briefing to constitute a due process challenge.

citing *UWMC*.[9] It also argues that considering new data is contrary to the legislative goal, stated in RCW 70.38.015(2), of overseeing the development of health and medical resources in a planned, orderly fashion because providers would be unable to rely on the Department to apply CN rules in a planned, orderly fashion.

¶15 Odyssey argues that prohibiting consideration of the new evidence would thwart the Department's broad authority to settle under RCW 70.38.115(10)(c); improperly limit an HLJs' discretion to consider new evidence under *UWMC*; allow use of the Department's prior, incorrect projections of need; and preclude Odyssey from presenting evidence showing its need projections were accurate. Odyssey argues that neither the secretary's memorandum nor the Department's denials of liability in an answer to the complaint have the force of law to overrule *UWMC*.

¶16 We conclude that the HLJ's order approving the settlement was not arbitrary and capricious on the ground that the Department agreed to consider the 2008 methodology. The critical fact is that the Department considered this new evidence in the context of a *settlement*.[10] Evergreen cites no authority precluding the Department, in a situation where it desires to settle a case, from deviating from its general policy in adjudicative proceedings of not

---

[9] In a October 22, 2007 memorandum issued by Department of Health Secretary Mary Selecky to HLJ Laura Farris, Selecky wrote that "[allowing] evidence to be submitted . . . that did not exist at the time the program made its decision . . . is contrary to the department's long practice of not allowing new evidence to come into the record at the adjudicative proceeding." Selecky wrote that "evidence that did not exist and was not part of the record at the time the Certificate of Need Program made its decision should not be admitted into the adjudicative proceeding." In the Department's answer to the federal lawsuit, the Department stated that the 2009 methodology could not be used as a basis for granting Odyssey's 2006 application.

[10] We note that while *UWMC* describes the "considerable discretion" of HLJs to "determine the scope of admissible evidence," including evidence that comes into existence after the close of the public comment period, *UWMC*, 164 Wn.2d at 104, that case is not precisely on point here because the HLJ in this case did not make the decision to admit or exclude evidence in the adjudicative proceeding. It was the Department that agreed, during settlement, to consider the new evidence in determining whether the CN criteria were met.

considering evidence available after the review period. Furthermore, chapter 70.38 RCW, as we have noted, imposes no substantive or evidentiary limitations on settlements. Finally, the Department described, in its notice of possible settlement, the "special circumstances" that existed for considering the new evidence:

> In 2008, the Program conducted its survey of existing King County providers for 2007 use data. Applying the hospice need methodology to this data showed a current need for two additional hospice agencies. Due to a special circumstance, the Program will consider this new data in deciding whether to approve the Odyssey's King County application. The special circumstance is that this new need data was not available to Odyssey by the deadline for applications in 2008. When the Department adopted the hospice need method, it had intended that current need data would be available to prospective applicants prior to the application deadline to provide them with guidance on whether to submit an application.

Given this explanation and the circumstances under which the new evidence was considered, Evergreen does not meet its burden of overcoming the presumption that the HLJ's approval of the settlement was correct.

## Non-need criteria

¶17 Evergreen next contends that notwithstanding the use of the 2008 methodology, the Department did not conduct any analysis of the three non-need criteria and the record does not support the HLJ's findings that those criteria were met. It contends the Department did not address the concerns it had about these criteria when it rejected Odyssey's applications in 2007 and, to the extent it articulated certain requirements in 2007, did not explain how they had since been met or no longer needed to be met.

¶18 Odyssey contends the HLJ found that its application met all four CN criteria. It contends that the Department's initial evaluation states that the non-need criteria were not

satisfied solely because the need criterion had not been satisfied. The Department agrees with Odyssey.

¶19  We conclude the record supports Odyssey's (and the Department's) contention that the three non-need criteria were initially found to be unmet in 2007 because the need criterion was not met. Though the Department was required to make findings regarding Odyssey's CN application, there is no apparent requirement for how detailed the findings must be. WAC 246-310-490(1)(a) states, "The findings of the department's review of a certificate of need application shall be stated in writing and include the basis for the decision of the secretary's designee as to whether a certificate of need is to be issued or denied for the proposed project." Here, the HLJ found in his final order: "For reasons stated by the [CN] Program in its evaluation and settlement proposal . . . Odyssey's hospice application for King County meets the requirements of WAC 246-310-210, 246-310-220, 246-310-230, and 246-310-240." The cited WAC provisions contain the four CN criteria. In its settlement proposal, the Department stated:

**"Need" is the only contested issue in the approval of the King County application.**

. . . .

The Program failed Odyssey's King County application on the need criterion. The Program also failed the application on financial feasibility, structure and process of care, and cost containment, but *only* because Odyssey had not demonstrated need. In other words, the Program would have approved the application had Odyssey demonstrated need.

Intervenors maintain Odyssey cannot demonstrate need. They do not contest that Odyssey's application fails any of the three non-need criteria.[11]

¶20  The Department's written evaluation initially denying the CN in August 2007 supports the foregoing state-

---

[11] The Department's evaluation and settlement proposal did not analyze why the non-need criteria were met; rather, it focused on the need criterion.

ment. In its evaluation, the Department first explained why the need criterion was not met. It then addressed the financial feasibility criterion, with its three subcriteria: (1) the immediate and long-range capital and operating costs of the project can be met; (2) the costs of the project, including any construction costs, will probably not result in an unreasonable impact on the costs and charges for health services; (3) and the project can be appropriately financed. The evaluation found that the first and second of these subcriteria were not met. The first was not met, the evaluation explained, because

> in the need section of this evaluation the department concluded that *need for an additional Medicare certified hospice agency has not been demonstrated. As a result,* the department concludes that Odyssey's projected number of patient days is not reliable and the department cannot conclude that sufficient revenue would be generated to meet the expenses of the proposed project.[12]

As for the second subcriterion, the evaluation explained:

> The department concludes that, while the initial capital expenditure of $45,000 proposed to establish this agency may be small, the applicant has not been able to show need for additional hospice services in King County except through significant modification of the department's need projection methodology. *Absent sufficient unmet need to support a new hospice agency, the department concludes* that any capital or operating expenditures incurred pursuing this project would be an unnecessary duplication of those made by existing providers and may result in an increase in the costs and charges for health services in the county.

¶21 Next, regarding the "structure and process (quality) of care" criterion, the Department's 2007 evaluation concluded that only the following subcriterion, out of five, was not met: "The proposed project will promote continuity in the provision of health care, not result in an unwarranted

---

[12] (Emphasis added.)

fragmentation of services, and have an appropriate relationship to the service area's existing health care system." The evaluation explained:

> Odyssey asserts that there is need for additional Medicare certified hospice agencies in King County. *However, in the need section of this evaluation, the department concluded that the existing providers are both available and accessible to adequately provide current and future hospice need in the county through 2011*. Additionally, a number of the existing providers indicated that they have capacity to serve the patients within the service area without adding staff.
>
> *Therefore, the department concludes* that approval of this project has the potential of fragmentation of Medicare certified hospice services within the service area, and this sub-criterion is not met.

¶22 Finally, with respect to the cost containment criterion, the 2007 evaluation concluded:

> The department concurs with the applicant's assertion that there has been no information available that would indicate any of the current hospices area [sic] available for acquisition. Further, approval of this project would allow an additional Medicare certified hospice agency in King County. *However, as previously concluded in this evaluation, no need has been demonstrated for additional services.*
>
> On the basis of the information provided within this application, the department concludes that adding another hospice agency is not the best available alternative for King County. This sub-criterion is not met.

¶23 Evergreen does not show that the HLJ's approval of the settlement was arbitrary and capricious given that the record supports the Department's statement to the HLJ that had the need criterion been met in the initial evaluation, the other criteria would have been met as well.

## Need criterion

¶24 Finally, Evergreen argues that notwithstanding the consideration of the 2008 methodology, the Department's

analysis of the need criterion was incomplete and faulty.[13] Odyssey and the Department disagree, claiming that Odyssey's application satisfied the need criteria under WAC 246-310-210 and 246-310-290.[14]

██ ¶25 Regarding whether the need criterion was or was not met, we note that we do not retry factual issues but instead accept administrative findings " 'unless we determine them to be clearly erroneous, that is, the entire record leaves us with a definite and firm conviction that a mistake has been made.' " *UWMC*, 164 Wn.2d at 102-03 (quoting *Providence*, 112 Wn.2d at 355). The record reflects that the Department submitted to the HLJ an extensive analysis as to why the need criterion was met based on more recent data. Evergreen presented arguments as to why the criterion was not met to both the Department and the HLJ.

---

[13] Specifically, it contends that (1) the Department did not include all hospice providers in evaluating current hospice capacity (by not including Kline Galland); (2) the Department arbitrarily extended the planning horizon by two years (it contends the planning horizon for 2009 should be 2009-2011, and if Kline Galland is included, the need for one more hospice agency disappears); and (3) the Department's 2008 methodology demonstrates no need in King County during the 2007-2009 planning horizon.

[14] Odyssey specifically argues that under RCW 70.38.111(9)(b), Kline Galland's patient census could be counted only when calculating need for hospice CN applications submitted after October 2009; therefore, its future census was properly excluded for Odyssey's 2006 application. Odyssey responds to Evergreen's contention that the Department arbitrarily considered the corrected December 2008 calculation rather than prior calculations by arguing that the HLJ had discretion to consider any of the Department's various need calculations.

The Department also responds to Evergreen's specific arguments. It contends that based on the record, Kline Galland is only a proposed King County hospice that may one day become a hospice exempt from CN review under RCW 70.38.111(9). The Department points out that the CN program presented three reasons for not counting Kline Galland in the adjudicative proceeding. It also disputes Evergreen's contention that Odyssey cannot show need within the three-year planning horizon. It points out the HLJ approved the settlement in 2009, making 2012 the earliest possible third year of operation. For 2012, it contends, the methodology showed an unmet need of 64 "average daily census" (meaning the average number of persons actually receiving care by an agency on one day) and therefore indicated a need for another hospice in King County. The Department notes that during the stay of the adjudicative proceeding, it performed an updated 2008 methodology that used new 2007 hospice-use data from existing providers. The 2008 methodology found, beginning in 2009, a projected unmet need of 37 "average daily census" in King County. Because the number was over 35, need existed for one additional hospice in King County.

Evergreen repeats those arguments on appeal but fails to meet its burden of showing that the Department's finding of need for an additional hospice agency was clearly erroneous or that the HLJ acted arbitrarily and capriciously in finding that the need criterion had been met where the Department's analysis showed that it was.

¶26 We conclude that the HLJ's final order approving the settlement between the Department and Odyssey was not arbitrary and capricious for the reasons asserted by Evergreen, and therefore reverse the trial court and remand for further proceedings.

¶27 Reversed and remanded.

ELLINGTON and APPELWICK, JJ., concur.

Review granted at 175 Wn.2d 1013 (2012).