# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MARK C. IDEN and VICKI WINSTON, )
                                   )
               Appellants, )
                                     )
             v.                    )
                                     )
WASHINGTON STATE DEPARTMENT )
OF LABOR AND INDUSTRIES,       )
ELEVATOR SECTION,             )
                                     )
             Respondent.     )

No. 74727-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 27, 2017

TRICKEY, A.C. J. — Mark Iden and Vicki Winston access their home via an incline elevator. They appeal a decision by the Washington State Department of Labor and Industries (the Department) to put their elevator out of service based on the Department's determination that the elevator was unsafe and violated Washington's safety regulations. An administrative law judge (ALJ) and the superior court affirmed the Department's determination. Iden and Winston argue that their elevator is safe and that the Department issued a variance for the elevator in 1989. Substantial evidence supports the ALJ's findings, adopted by the superior court, that the elevator is unsafe and that the Department never granted a variance for the elevator.

Iden and Winston also argue that the doctrines of equitable estoppel and laches bar the Department from currently asserting that the elevator is unsafe or violates safety regulations. Because Iden and Winston have not shown that allowing the Department to enforce its safety regulations would create a manifest injustice and have not shown they were prejudiced by the Department's delay, we affirm.

## FACTS[1]

In 1992, Iden and Winston, a married couple, purchased a house in Burien, Washington from Robert Roblee and his wife (the Roblees). The house is at the bottom of a very steep slope. The only two ways to reach the house from the parking area are a "treacherous footpath" with several switchbacks and a Rehmke Mark 12 tram incline elevator.[2] The house is "practically inaccessible" without the elevator.[3]

The Roblees installed the Rehmke elevator in 1989. The Department completed an inspection of the elevator after its installation. The Department issued a temporary operating permit but warned the owners that they would need to secure a variance because the elevator did not meet the standards for several Washington safety regulations.[4]

The primary issue with the elevator is that it uses a Rehmke hook as a safety in case the cable that lifts the car breaks. Since 1987, the American Society of Mechanical Engineers has required elevators to have either a Type A safety, which stops the elevator car immediately, or a Type B safety, which stops the car in less than 15 inches. When it works, the Rehmke hook stops the car

---

[1] These facts rely heavily on the ALJ's findings of fact, which were incorporated into the superior court's order. Iden and Winston have not complied with the RAP 10.3(g), (h) requirement to specify by number any findings of fact they contest. Unchallenged findings of fact are verities on appeal. In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). In light of the liberal policies of RAP 1.2, we do not treat as verities any of the ALJ's or the superior court's findings that Iden and Winston clearly challenge. See Ferry County v. Growth Mgmt. Hearings Bd., 184 Wn. App. 685, 725, 339 P.3d 478 (2014).

[2] Clerk's Papers (CP) at 13-14 (Findings of Fact (FF) 4.1, 4.6).

[3] CP at 14 (FF 4.6).

[4] "(A) WAC 296-94-110 #1; (B) WAC 296-94-120 #2, #3, #4; (C) WAC 296-94-170 #3." CP at 14 (FF 4.4).

2

within four feet, but causes metal fatigue and damage. Unfortunately, sometimes the Rehmke hook does not work, and the runaway elevator car gains speed and momentum.

The Roblees requested a variance, explaining the design of the Rehmke hook. According to the Department, it never granted the Roblees a variance to use a Rehmke hook instead of a Type A or Type B safety. Nevertheless, the Department issued the Roblees a permanent operating permit.

Iden and Winston relied on the permit as proof that the elevator was safe and legally operable without upgrades or replacements. Without the permit, they would not have agreed to purchase the house at the same price.

In June 1993, the Department inspected the elevator again. The Department demanded that the owners correct several deficiencies within 90 days, including that the safety did not comply with WAC 296-94-170.

In August 1994, Iden and Winston scheduled a new inspection but cancelled it.

In November 1997, the Department sent a letter to check the status of the elevator and schedule a new inspection. It noted that the elevator had not passed its last inspection and enclosed a copy of the 1993 inspection report. There was no inspection for the next decade.

In 2005, the Department determined that the Rehmke hook was not only out of compliance with the Washington regulations, but posed "a very real and very immediate danger" to users.[5] The Department warned the companies that maintained the elevators about the dangers but did not immediately contact the

[5] CP at 121 (FF 4.21).

3

homeowners. Because Iden and Winston performed their own maintenance and repairs, they did not learn about the Department's concerns at that time.

In June 2008, the Department sent letters to all Rehmke elevator owners, notifying them that the Department believed that the Rehmke hook was dangerous. The letter suggested that owners of elevators using a Rehmke hook attempt to upgrade their elevators to "current standards" and advised that the Department would "take further steps to bring these lifts into compliance."[6]

In January 2013, the Department inspected Iden and Winston's elevator and determined that it was unsafe. The Department "red tagged" the elevator, making it illegal to operate. In February, the Department removed the red tag, giving Iden and Winston until May 2013 to work out a plan and timeline for bringing the elevator into compliance.

There is essentially no way to bring Iden and Winston's current elevator into compliance without replacing the elevator. The estimated cost to replace the elevator ranges from $80,000 to $125,000.

Iden and Winston requested a hearing to contest the Department's determination. An ALJ affirmed the Department's decision. Iden and Winston sought judicial review of the ALJ's decision. The superior court affirmed the ALJ's decision. Iden and Winston appeal.

## ANALYSIS

As a preliminary matter, Iden and Winston have not properly supported many of their arguments with citation to legal authority, in violation of RAP 10.3(a)(6). Moreover, although Iden and Winston provide some record citations

---

[6] Administrative Record (AR) at 145.

4

in their statement of the case, they do not provide adequate record citations in their argument section. We acknowledge that Iden and Winston are representing themselves. But self-represented litigants are "expected to comply" with the rules of appellate procedure. State Farm Mut. Auto. Ins. Co. v. Avery, 114 Wn. App. 299, 310, 57 P.3d 300 (2002).

We elect to review the issues Iden and Winston raise, despite the inadequate briefing, but note that the absence of citations makes our review difficult.

The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs judicial review of agency actions. City of Seattle v. Swanson, 193 Wn. App. 795, 810, 373 P.3d 342 (2016). The superior court may overturn an agency decision only if the "decision is based on an error of law, the order is not supported by substantial evidence, or the order is arbitrary and capricious." Campbell v. State Emp't Sec. Dep't, 180 Wn.2d 566, 571, 326 P.3d 713 (2014). The Court of Appeals sits in the same position as the superior court. Swanson, 193 Wn. App. at 810.

## Compliance with Safety Regulations

Iden and Winston argue that the ALJ and the superior court erred by determining that Iden and Winston's elevator was unsafe and ordering them to discontinue its use. Because substantial evidence supports the ALJ's and the superior court's decisions, we disagree.

We will uphold the ALJ's findings of fact as long as they are supported by substantial evidence. Campbell, 180 Wn.2d at 571. Substantial evidence is that

which is sufficient to persuade a fair-minded person of the truth of the declared premise. Sprint Spectrum, LP v. State Dep't of Revenue, 174 Wn. App. 645, 653, 302 P.3d 1280 (2013). "We review the evidence in the light most favorable to the party who prevailed in the highest administrative forum to exercise fact-finding authority." Sprint, 174 Wn. App. at 654. "We do not reweigh the evidence." Univ. of Wash. Med. Ctr. v. State Dep't of Health, 164 Wn.2d 95, 103, 187 P.3d 243 (2008).

Here, the Department had the authority to inspect private elevators and red tag any that it determined were unsafe. RCW 70.87.120(4), .145(5). An elevator is unsafe if it does not have a Type A or Type B safety, or a Department approved substitute. WAC 296-96-07170(1)(a). These safety rules were in effect in 1989 when Iden and Winston's elevator was installed.[7] WAC 296-96-00650.

It does not appear that Iden and Winston challenge these legal conclusions or a finding that, without a variance, their elevator does not conform to these standards. Most of Iden and Winston's arguments on this point are challenges to the ALJ's finding that the Department did not grant Iden and Winston a variance.

Iden and Winston were able to produce some evidence that their elevator had received a variance. The Department issued the Roblees an operating permit, and sent the Roblees an "acceptance letter" after the Roblees' engineer applied for a variance on their behalf.[8] But the Department had an employee

---

[7] See former WAC 296-94-170(2) (1986).
[8] AR at 173, 259.

testify that issuing an operating permit would not necessarily have meant that the Department had concluded the elevator was "in compliance with the law."[9] And the Roblees' engineer's letter requested variances for a variety of deficiencies, including, for example, the height of the cars' enclosures. Even assuming the Department was accepting some of the requests for variances, it is not clear which requests the Department was accepting.

Moreover, Iden and Winston did not produce a variance or a witness who could testify from personal knowledge that the Department issued a variance for this elevator. Iden testified that he was never able to "provide the Department with any documentation supporting [his] belief that there was a variance granted."[10]

Iden and Winston argue that it was the Department's duty to maintain records of variances. But they cite no authority for the position that the Department has the burden to prove that it did not issue a variance or that the Department's failure to produce a record of a variance is evidence that a variance was granted.[11]

We conclude that substantial evidence supports the ALJ's finding that the Department never affirmatively granted the Roblees a variance for this elevator.

Iden and Winston also raise several challenges to the ALJ's finding that

---

[9] AR (Jan. 6, 2015) at 106-107.

[10] AR (Jan. 29, 2015) at 361.

[11] Iden and Winston argue that the Department improperly destroyed evidence of the variance. "Spoliation" is "[t]he intentional destruction of evidence." Henderson v. Tyrrell, 80 Wn. App. 592, 605, 910 P.2d 522 (1996) (alteration in original) (quoting BLACK'S LAW DICTIONARY 1401 (6th ed. 1990)). The Department contends that Iden and Winston cannot raise this issue on appeal because they did not raise it to the ALJ. Accordingly, we do not reach this issue. See RAP 2.5(a).

7

the Rehmke hook is not as safe as a Type A or Type B safety. Their concerns include that the Department's employee did not provide a report for the accident involving an elevator with a Rehmke hook that she witnessed, that a video showing how a Rehmke hook could cause accidents was not reliable, that the Department's concerns about the dangers of the Rehmke hook were not credible because it waited three years before alerting homeowners, and that there have been no accidents involving elevators with Rehmke hooks in Washington.

Their challenges ask us to reweigh evidence and assess the credibility of the Department's witnesses. Essentially, it appears that Iden and Winston would like us to conduct a de novo review of the Department's determination that the Rehmke hook was unsafe. That is not appropriate at this stage of review.

Additionally, even if a Rehmke hook provides a comparable level of protection as a Type A or Type B safety, Iden and Winston would still need to receive a variance in order to be in compliance with the regulations. Therefore, the Department would be within its authority to red tag Iden and Winston's elevator. The Department suggests that Iden and Winston are currently seeking a variance or are seeking a holding that the Rehmke hook should qualify for a variance. If that is true, Iden and Winston must apply to the Department for that variance; this court does not have the authority to decide that question in the first instance.

We conclude that the ALJ and the superior court did not err by concluding that the Department properly red tagged Iden and Winston's elevator.

## Equitable Estoppel

Iden and Winston argue that the Department should be equitably estopped from enforcing Washington's safety regulations. Specifically, Iden and Winston argue that they purchased their house at a greater price than they would otherwise have paid in reliance on the Department's issuance of the operating permit. Because Iden and Winston cannot show that there would be a manifest injustice if the Department is not estopped, we disagree.

To show that a government entity is equitably estopped from taking a position, the person asserting estoppel must prove the following elements by clear, cogent, and convincing evidence:

> (1) a statement, admission, or act by the party to be estopped, which is inconsistent with its later claims;
> (2) the asserting party acted in reliance upon the statement or action;
> (3) injury would result to the asserting party if the other party were allowed to repudiate its prior statement or action;
> (4) estoppel is "necessary to prevent a manifest injustice"; and
> (5) estoppel will not impair governmental functions.

Silverstreak, Inc. v. Washington State Dep't of Labor & Indus., 159 Wn.2d 868, 887, 154 P.3d 891 (2007) (quoting Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wn.2d 738, 743, 863 P.2d 535 (1993)).

Here, the ALJ found that there would be no manifest injustice if the Department were allowed to proceed with this action. From at least 1993 onward, Iden and Winston were on notice that the Department considered their elevator to be out of compliance. The ALJ concluded that, "[a]mortized over 21 years, the large present expense [of replacing the elevator] is relatively small."[12]

---

[12] CP at 22 (Conclusion of Law 5.14).

Moreover, within a month of red tagging the elevator, the Department was willing to allow Iden and Winston to continue to use their elevator as they worked out a plan and timeline to replace it. We cannot say the ALJ's conclusion that there was no manifest injustice was erroneous. Because Iden and Winston cannot prove that enforcing the Department's rules would be a manifest injustice, their equitable estoppel argument fails.

Laches

Iden and Winston argue that the doctrine of laches bars the Department's attempt to enforce the safety regulations against them because of the Department's unreasonable delay. Because Iden and Winston were not prejudiced by the delay, we disagree.

The party asserting the doctrine of laches must prove two elements: "'(1) inexcusable delay and (2) prejudice to the other party from such delay.'" Automotive United Trades Org. v. State, 175 Wn.2d 537, 542, 286 P.3d 377 (2012) (quoting State ex rel. Citizens Against Tolls (CAT) v. Murphy, 151 Wn.2d 226, 241, 88 P.3d 375 (2004)).

There is no denying that the Department was slow to enforce its rights. From 1989 to 2013, the Department knew that Iden and Winston's elevator was out of compliance but took little action to force Iden and Winston to bring the elevator into compliance. But the record demonstrates that the Department became much more concerned about the safety of elevators with the Rehmke hooks in 2005 and communicated its concerns to the professionals who serviced those elevators at that time. Three years later, the Department issued a serious

10

warning to Iden and Winston about the safety of the Rehmke hook. Given the Department's preference, stated in its 2008 letter, for the homeowners to mitigate the issues with the Rehmke hook, we cannot say that the Department's delay between was inexcusable.

Even if the delay were inexcusable, Iden and Winston cannot show prejudice. A defendant cannot prove damage or prejudice "simply by showing he is having to do now what he has been legally obligated to do for years." In re Marriage of Capetillo, 85 Wn. App. 311, 318, 932 P.2d 691 (1997). Iden and Winston's elevator has never been in compliance with applicable Washington safety regulations. They have known since at least 1993 that they were legally obligated to bring the elevator into compliance, and received another two warnings about the elevator over the last 20 years. They are not prejudiced by a requirement to finally fulfill their legal obligation. Iden and Winston's argument that the doctrine of laches bars the Department's claim fails.

We affirm the order of the superior court.

Trickey, ACJ

WE CONCUR:

Cox, J