[No. 5438–1–III.   Division Three.   July 31, 1984.]

Harry Keppeler, *Appellant,* v. The Board of Trustees
of Community College District No. 15,
*Respondent.*

*Ronald E. Farley, C. Kenneth Grosse,* and *Hodge, Grosse, Logerwell & Farley, P.S.,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Owen F. Clarke, Jr., Assistant,* for respondent.

McINTURFF, J.—Dr. Harry Keppeler appeals from a judgment affirming the decision by the Board of Trustees of Wenatchee Valley College (Board) laying him off his tenured faculty position. We affirm.

The Board's decision followed a formal hearing held at Dr. Keppeler's request. Evidence showed that James R. Davis, the college president, notified Dr. Keppeler on February 27, 1981, that he would be placed on layoff status effective June 16, 1981, because of insufficient funds and/or a change in instructional programs. The notification cited (1) the Board of Trustees' action of January 14, 1981, declaring a financial emergency and the need for a reduction in force, and (2) the Board's action of February 11, 1981, establishing the comprehensive educational services of the college for 1981–82 which excluded Dr. Keppeler's teaching area, the agricultural program.

In support of the declaration of financial emergency, the college produced evidence that it began to experience financial difficulties in the year 1980–81 when the original budget allocation from the State Board of Community College Education (State Board) was reduced by 5 percent. To meet the reduction, the college imposed an austerity budget in goods, services, plant maintenance and operation; cut administrators, classified staff and part–time instructors; and canceled the summer school program. There was testimony the cuts could not continue into 1981–82 without seriously impacting the college's facilities and programs. According to President Davis, the proposed 1981–82 funding allocation would not allow the college to meet its needs unless it eliminated some full–time teaching positions. The State Board had previously determined that the college was overstaffed in faculty by 13.459 FTE–F (full–time equivalent faculty).

During the fall and winter of 1980–81, the college's planning committee developed an annual plan for the college

which, *inter alia,* rated segments of the agricultural program as number one and number two priorities. In its January 28, 1981, meeting, the Board heard public comment on the plan and also considered the findings of the college's Agricultural Advisory Committee. Included in the Committee's report was its conclusion that the present agricultural program was not meeting the needs of the students or the community. It recommended elimination of the college's existing agricultural program in favor of a new program of tree fruit production. As a result, the Board adopted an annual plan which eliminated the agricultural program. Then on February 11, 1981, the Board made a determination of comprehensive educational services as required by its agreement with the faculty association upon declaration of a financial emergency. This determination also eliminated the agricultural program as it was then constituted. A tree fruit production program was included as part of a comprehensive service.

At the time of the hearing, the college was developing a tree fruit production program for implementation in the winter quarter 1982. Qualifications for the program's instructor had not yet been determined, although in Dr. Keppeler's analysis the program's proposed courses did not differ significantly from those he had taught in the college's agricultural program for the past several years. The college's dean of instruction and the associate dean for occupational education did not concur in Dr. Keppeler's analysis. President Davis testified that Dr. Keppeler would have a right of first refusal of the instructor's position in the new program if he met the qualifications.

The hearing examiner concluded Dr. Keppeler was properly laid off for reasons of insufficient funds and change in program, but that these reasons would not continue beyond commencement of the new program. Hence, he recommended the Board amend Dr. Keppeler's layoff notice to provide for a return to full–time status when the new program was implemented. The Board rejected this recommendation and affirmed Dr. Keppeler's layoff notice as

written.

RCW 28B.19.150 of the State Higher Education Administrative Procedure Act, governs judicial review of the administrative decision here. That statute provides that the court's review shall be confined to the record. RCW 28B.19.150(5). Further, under RCW 28B.19.150(6), the court shall reverse if the substantial rights of the petitioner have been prejudiced because the decision is, *inter alia,*

> (a) In violation of any state or federal constitutional provision; or . . .
> (e) Clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; . . .

First, Dr. Keppeler contends the Board's decision was clearly erroneous. He maintains that the reasons for his dismissal are not supported by the record and his dismissal therefore violates the tenure statute, RCW 28B.50, and the college's agreement with the faculty association. Specifically, he argues a financial emergency did not exist for the relevant time periods, the college did not save money as a result of his layoff, and he was qualified to teach the new program. We disagree.

The test for determining whether a decision is clearly erroneous is whether the reviewing court is firmly convinced that a mistake has been committed even though there may be some evidence supporting the decision or order. *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969) (applying the clearly erroneous standard under RCW 34.04, the administrative procedure act). However, the clearly erroneous standard of review does *not* authorize a court to substitute its judgment in factual matters for that of an administrative agency. The mere fact there exists credible evidence contrary to the tribunal's findings is not sufficient by itself to label those findings clearly erroneous. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983).

While there is testimony that the college's 1981–82 budget was balanced at the time of the hearing, it is clear

from the record that the balancing was achieved only because the college had pursued budget cuts, including reduction in faculty. Dr. Keppeler's argument that his lay-off was unjustified because a financial emergency did not exist at the time of hearing is circular. If the college reinstated items previously cut, it would again face a financial emergency. The record supports a finding that the money allocated by the Legislature for 1981–82 was insufficient to allow the college to offer a comprehensive program plus retain the cut services.[1]

Nor does the record sustain Dr. Keppeler's contention that the college did not save money by his dismissal. The college saved his salary and the other costs associated with the canceled agricultural program. The fact the college contemplated adding a high priority program[2] sometime in 1981–82 cannot be used to offset the savings gained by canceling a program which is not considered essential. The Agricultural Advisory Committee's report is sufficient to support the low priority given the agricultural program by the Board. The report itself articulated reasons for the committee's recommendation to terminate the program, on which the Board justifiably relied. Hence, Dr. Keppeler's argument that the Board's reliance on this report was impermissible because the faculty agreement did not affirmatively allow such reliance is not well taken.

Finally, since the qualifications for the instructor of the proposed tree fruit production program have not been

---

[1]Throughout his brief, Dr. Keppeler argues that the financial emergency was an excuse to terminate him. He points out that the college had attempted to lay off him and several other teachers earlier in the 1980–81 year based upon a financial emergency, but that the court ordered their reinstatement because the college had not followed proper procedures. However, the evidence detailed in the body of this opinion supports the Board's finding of financial emergency justifying the second layoff notice. We will not assume an ulterior motive on the part of the college based on the single fact it previously had attempted to terminate Dr. Keppeler.

[2]Counsel argued at oral argument this program had not been implemented even now in 1984.

established, it is impossible to determine whether Dr. Keppeler is qualified to teach in that program.

After reviewing the record, the court is not left with a "firm conviction" that the Board committed a mistake in its decision to lay off Dr. Keppeler. Consequently, we reject Dr. Keppeler's argument that the decision was clearly erroneous.

Second, Dr. Keppeler asserts the Board violated his due process rights by terminating him for reasons that had no basis in fact. He renews his argument that the financial emergency was an "excuse" for his layoff. In addition, he contends there was no substantive change in program—just a change of names. To lay him off in these circumstances, he maintains, affects his property interest in his faculty position and deprives him of due process. Again, we disagree.

As outlined above, the record supports the Board's finding of financial emergency. As for the program change, we note Dr. Keppeler introduced into evidence the proposed course outlines for the new program and opined they were essentially the same courses offered in the old agricultural program. However, the dean of instruction and the associate dean for occupational education did not concur in Dr. Keppeler's opinion. The Board's acceptance of the administrators' opinions cannot be deemed "unreasoning" based only on Dr. Keppeler's disagreement with those opinions. Accordingly, we hold the Board's actions complied with due process.

The judgment of the Superior Court is affirmed.

MUNSON, C.J., and THOMPSON, J., concur.