[No. 55778–1.   En Banc.   April 13, 1989.]

PROVIDENCE HOSPITAL OF EVERETT, *Appellant,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, ET AL, *Respondents.*

*Bennett & Bigelow, David A. Bennett,* and *Stephen I. Pentz,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Brian D. Peyton, Assistant,* for respondent State.

*Anderson, Hunter, Dewell, Baker & Collins, P.S.,* by *G. Douglas Ferguson* and *Robert B. Willoughby,* for respondent General Hospital of Everett.

BRACHTENBACH, J.—This is an appeal from an order of the Thurston County Superior Court that sustained a decision of the Secretary of the Department of Social and Health Services (DSHS). The decision of the Secretary denied the application of Providence Hospital of Everett (Providence) for a certificate of need to provide obstetrical services. We affirm.

The prelude to our decision has been prolonged and exhaustive. Much of the detailed evidence is not necessary for this opinion, so we first summarize the matter and will refer to the record when relevant.

This process began in 1984 when Providence applied for a certificate of need (CON) to establish a 10–bed obstetrical unit. Establishing a 10–bed obstetrics unit, a Level I service, constitutes a substantial change in services and requires agency approval. WAC 248–19–230(1)(b)(i)(N). An advisory review process included consideration by the Snohomish County Facilities Review Committee, the Puget Sound Health Systems Agency, and the State Hospital Commission. The first two bodies recommended approval. The Hospital Commission recommended denial, both as an initial decision and after reconsideration upon Providence's

motion. Pursuant to RCW 70.38.115, a de novo hearing was held for 11 days before an administrative law judge (ALJ), resulting in a 2,472–page transcript of testimony from 26 witnesses. General Hospital of Everett (General) was determined to be an affected party as defined in WAC 248–19–220(2) for the administrative proceedings and an intervenor before the ALJ and the Superior Court. The ALJ issued findings of fact, conclusions of law, and a proposed decision (23 pages). The Secretary of DSHS, after review, issued his findings, conclusions, and final decision denying Providence's CON application.

Providence next sought judicial review pursuant to RCW 34.04. Thurston County Superior Court Judge Berschauer rendered a 24–page oral opinion affirming the Secretary's decision. Judge Berschauer's opinion reflects a thorough review of the record, an accurate understanding of the appropriate standards of review, and a precise identification of the issues. Providence appealed the Superior Court's decision affirming DSHS, and this court accepted certification from the Court of Appeals. RCW 2.06.030; RAP 4.2.

The appropriate standards of review stem from RCW 34.04.130(6): affected by error of law, clearly erroneous, and arbitrary and capricious. These statutory criteria have been interpreted and defined in a number of cases; the rationale of those cases need not be repeated, but may be summarized:

1. We review the entire administrative record. *Renton Educ. Ass'n v. Public Empl. Relations Comm'n,* 101 Wn.2d 435, 440, 680 P.2d 40 (1984).

2. The agency decision is presumed correct and the challenger bears the burden of proof. *In re All–State Constr. Co.,* 70 Wn.2d 657, 659, 425 P.2d 16 (1967).

3. We do not retry factual issues and accept the administrative findings unless we determine them to be clearly erroneous, that is, the entire record leaves us with a definite and firm conviction that a mistake has been made. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983). Important here is the corollary principle that the existence of

credible evidence contrary to the agency's findings is not sufficient in itself to label those findings clearly erroneous. *Keppeler v. Board of Trustees of Comm'ty College Dist. 15*, 38 Wn. App. 729, 732, 688 P.2d 512 (1984) (citing *Franklin Cy. Sheriff's Office v. Sellers, supra*).

4. The error of law standard permits this court to substitute its interpretation of the law for that of the agency, but we accord substantial deference to the agency's interpretation, particularly in regard to the law involving the agency's special knowledge and expertise. *Franklin Cy.*, at 325.

5. To find an agency's decision to be arbitrary and capricious we must conclude that the decision is the result of willful and unreasoning disregard of the facts and circumstances. *Barrie v. Kitsap Cy.*, 93 Wn.2d 843, 850, 613 P.2d 1148 (1980).

Turning first to the law, the governing statute is RCW 70.38, the State Health Planning and Resources Development Act (SHPRDA). The public policy declared in RCW 70.38.015 includes: (1) health planning to provide accessible health services and facilities, while controlling excessive increases in costs; (2) health planning concerned with financing, access, and quality emphasizing cost control of health services through cost–effectiveness and cost–benefit analysis; and, (3) development of health services without unnecessary duplication.

RCW 70.38.015(6) mandates construction of the chapter to effectuate that policy and "to be consistent with requirements of the federal health planning and resources development laws." The National Health Planning and Development Act (in effect throughout the proceedings below, but subsequently repealed) reflects concern with duplication and an excess supply of certain health services, and acknowledges the effects of competition and the lack of competition. 42 U.S.C. § 300k–2(b)(1)–(3), *repealed by* Pub. L. No. 99–660, Title VII, § 701(a) in part, 100 Stat. 3799 (1987).

The CON application procedure is contained in RCW 70.38.105–.125. Criteria for review of CON applications are set out in RCW 70.38.115(2). The statutory review criteria

are grouped by administrative regulation into four categories: need, financial feasibility, structure and process of care, and cost containment. WAC 248–19–360(1). Each standard is further defined in WAC 248–19–370, –380, –390, and –400, respectively.

Following a review of these criteria, DSHS concluded, in part: (1) "Providence has not established a need for additional obstetric beds in the Central Snohomish planning area", conclusion of law 5; (2) "[General's] existing service and facility is similar to that being proposed [by Providence]", conclusion of law 7; (3) "The establishment of a duplicative and unneeded obstetric service at Providence is not the best alternative in providing health care to this area", conclusion of law 13; (4) Providence's proposal "is not financially feasible because it would have an unreasonable impact on the costs and charges for health service", conclusion of law 14; and (5) "Providence's proposed project would not foster cost containment", conclusion of law 17.

The first major challenge by Providence is that DSHS committed an error of law by relying upon what Providence characterized as General's "proposed, nonexistent obstetrics program." Brief of Appellant, at 7.[1] SHPRDA states that DSHS shall consider "the efficiency and appropriateness of the use of existing services and facilities similar to those proposed". RCW 70.38.115(2)(i); *see* WAC 248–19–370-(1)(b). Providence argues that under accepted rules of statutory construction, use of the phrase "existing services and facilities" implies that DSHS is restricted to a consideration of *only* existing services and facilities.

■ There are several answers to the *law* interpretation urged by Providence. First, the statute states that DSHS's determination "shall include but not be limited to" the enumerated criteria. RCW 70.38.115(2). Thus, the statute does not restrict DSHS to a consideration of only existing

---

[1]We have examined carefully each argument presented by Providence challenging DSHS's final decision, but address only those we feel merit discussion.

services and facilities. Second, WAC 248–19–370 provides that one criterion to be considered is whether

> [t]he population served or to be served has need for the project and other services and facilities of the type proposed are not or *will not be* sufficiently available or accessible to meet that need.

(Italics ours.) WAC 248–19–370(1). This language clearly contemplates that DSHS may consider future or proposed facilities in CON applications. A contrary conclusion would unrealistically limit DSHS's ability to make a fair and accurate assessment of the community's need for new services and facilities.

Thus, it is apparent that legally DSHS may consider proposed facilities that do not physically exist, or are not currently in use. However, it is equally obvious that it would be unacceptable to rely on a speculative, nebulous announcement (Providence's term) that another hospital planned to do something in the future. This last concern requires a review of the facts to determine whether DSHS relied on General's mere announcement of some future project obviating the need for the services and facilities proposed by Providence.

A sketch of the history of obstetric care facilities in Everett is necessary. Both Providence and General provided obstetric care until 1978. The two hospitals agreed to consolidate obstetrics services at General and pediatric services at Providence. According to the findings of fact, this consolidation was done to ensure the highest quality of patient care services while maximizing cost effectiveness. Providence acknowledged in a 1981 CON application that these purposes were being met by the consolidation. Finding of fact 2.

Prior to Providence's application here involved, General had both expanded and changed the format of its obstetric services. General had obtained appropriate CON's to increase obstetric beds from 19 to 26 and then to 34. These expansions were supported by the Joint Planning Committee of General and Providence. During the review of

Providence's application, General was in the process of remodeling its obstetric unit to create additional child–bearing rooms. The remodeling would result in a total of 40 beds. General had submitted its preliminary plans for the remodeling, which had been approved, and was in the process of submitting final working drawings. These facts relate to a determination of need.

It is clear to us that General had done more than merely announce a speculative future project. When a current provider has taken significant steps to implement plans to develop additional facilities, which do not need CON approval, ignoring such plans would be contrary to SHPRDA's policy of planned, orderly development of health care facilities without unnecessary duplication or fragmentation. RCW 70.38.015(2). Thus, DSHS did not err by considering General's planned services and facilities.

While Providence unconvincingly challenges DSHS's reliance on the methodology used to calculate bed needs, there is evidence to support DSHS's conclusion that the remodeling project will provide beds sufficient to meet the need in the area. There being evidence to support DSHS's findings and conclusions, which are made in accordance with its proper interpretation of the law, this court is not about to engage its own evaluation of the number of obstetric beds needed.

Providence's next challenge is to what it describes as "a clearly erroneous and/or arbitrary or capricious factual determination . . . that the type of obstetrical care to be provided in the Providence single unit delivery system is or will be provided by General Hospital." Brief of Appellant, at 21.

Providence argues that the evidence establishes that its single unit delivery system (SUDS) is a unique, cost effective method of meeting the community's need for obstetrical services. There was extensive testimony about the nature and function of Providence's SUDS proposal and General's traditional facilities, as well as General's alternative services of "birth" rooms, "child–bearing" rooms, and

"rooming in" options. Moreover, DSHS's findings reflect a careful factual review of all of the benefits of the proposed SUDS design, a format then in use at six to eight hospitals in the nation. The special finding was that "[t]he SUDS format is similar to the birthing room option available at [General]. SUDS would provide almost identical care for patients as that planned for the child–bearing rooms at [General]." Finding of fact 14. The conclusion of law was that "Providence has not established need by virtue of the SUDS birthing format being different from the format in use at [General]. WAC 248–19–370(1)(b). [General's] existing service and facility is similar to that being proposed." Conclusion of law 7.

The fatal error in Providence's attack on these findings and conclusions is shown by this quote from its brief:

> Because the evidence introduced by Providence so greatly outweighs the limited rebuttal evidence introduced by the DSHS and by General, this court should conclude that the DSHS has made a clearly erroneous determination. Moreover, the disparity is great enough that the Court may alternatively conclude that the DSHS determination was arbitrary or capricious.

Brief of Appellant, at 28.

The Department weighed conflicting evidence and drew conclusions. It is not our function to reweigh the evidence in an effort to reach different conclusions than did the agency. Thus, we find DSHS's determination that Providence's SUDS program is similar to services and facilities offered at General is neither clearly erroneous nor arbitrary and capricious.

Providence next contends that DSHS erred in law and fact "by failing to consider the community's need for the religious and ethical alternative that the Providence Obstetrics Program will provide." Brief of Appellant, at 28. Providence is owned and operated by the Sisters of Providence, a Catholic religious order. We assume, for purposes of this decision, that Providence is correct in its statement

that many people *desire* to obtain obstetrical care in a hospital that does not perform abortions or sterilization procedures.

The only authority cited by Providence in support of its argument is RCW 70.38.115(2)(b) and WAC 248–19–370(1), which both provide that one element to be considered in review of CON applications is "the need that the population served or to be served by such services has for such services." In addition, WAC 248–19–360(1)(a) provides guidelines to determine "need", but is similarly general: DSHS is to consider "[w]hether the proposed project is needed."

In reality, Providence wishes to equate health related "needs", which are the focus of the State's health planning statutes and regulations, with religious and ethical preferences. Providence's own briefs demonstrate that their argument is not based upon health–related "needs". At one point the brief states:

> However, the DSHS should not be permitted to ignore the needs of people who strongly oppose abortion and who therefore do not *wish* to receive obstetrical care in a hospital, such as General, in which abortion procedures are performed.

(Italics ours.) Brief of Appellant, at 30–31. Later, Providence argues that even though obstetrical care is available to them, there are people who "do not *wish* to obtain obstetrical care at General either because it is not affiliated with a religious denomination or because of its policy permitting abortions and sterilizations to be performed in its facilities." (Italics ours.) Reply Brief of Appellant, at 13.

In calculating "need" DSHS made no assessment of religious background because the services at General are available to the general population regardless of religious background. Finding of fact 18. This led to the conclusion of law that the "preference of a portion of the population to receive health care in a facility complying with a specific religious doctrine cannot be equated with a lack of an available health care service." Conclusion of law 9.

It would be contrary to the declared legislative policy of RCW 70.38, as implemented by regulations not challenged here, to hold that the subjective religious or ethical beliefs of some people are mandatory elements of the determination of health care needs of all the people. To carry Providence's argument to the boundaries contained in its own assertion, one would have to conclude that persons of all faiths, or of no faith, and with every shade of ethical principles, or none, would be entitled to health care facilities consistent with their own particular or even peculiar beliefs or principles. The only limitation Providence's counsel suggested at oral argument was that of "reasonableness". It is not our function, nor inclination, to impose by our opinion such an incredibly far–reaching standard. Nor do we find *any* evidence that such was the intent of the statute or the regulations. There was no error in this regard.

Providence next challenges DSHS's determination that Providence's proposed obstetrics unit was not financially feasible. Providence argues that the Secretary's findings and conclusions were clearly erroneous and/or arbitrary and capricious. Once more Providence attempts to put the reviewing court into the business of reweighing evidence and drawing conclusions in an area of expertise delegated to an agency. There is substantial evidence concerning underutilization, cross subsidization, capital expenditures, financial viability, and patient costs. Indeed, even the advisory bodies that recommended approval did so, in part, because the "benefits of the project outweighed the potential increase in community cost." Finding of fact 19. The Hospital Commission recommended denial because it found there was no bed need for the proposal and that the cost of medical care would be increased thereby. Finding of fact 20.

Once more, Providence's own briefs belie its assertion of error. For example, it refers to testimony that challenges cost shifting because "it is not rational economic behavior." Brief of Appellant, at 51. It refers to the lack of independent rebuttal testimony. Brief of Appellant, at 52. The final

blow to Providence's position is its statement that the "paucity" of evidence supporting the finding is sufficient to permit this court to conclude the findings are clearly erroneous and/or arbitrary or capricious. Reply Brief of Appellant, at 31. To do so would be contrary to every principle of judicial review of administrative proceedings.

Upon review of the various advisory opinions, as well as volumes of testimony and exhibits, DSHS determined that Providence's project was not financially feasible. The related findings and conclusions are neither clearly erroneous nor arbitrary or capricious.

In sum, we hold that DSHS was correct in its denial of Providence's CON application to provide Level I obstetrics services. The DSHS's final decision evidences a thorough examination of all relevant statutory criteria and policy considerations unaffected by other error of law, which was neither clearly erroneous nor arbitrary or capricious.

The trial court is affirmed.

CALLOW, C.J., UTTER, DOLLIVER, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., and MITCHELL, J. Pro Tem., concur.