**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SEASONS HOSPICE & PALLIATIVE CARE OF SNOHOMISH COUNTY, | No. 57759-3-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF HEALTH, | PUBLISHED OPINION |
| Respondent. | |

GLASGOW, C.J. — After the Department of Health determined that there was a need for two additional hospice providers in Snohomish County, Seasons Hospice & Palliative Care of Snohomish County, LLC applied for a certificate of need to provide hospice services there. To obtain a certificate of need, Seasons was required to establish financial feasibility. As part of its financial feasibility analysis, Seasons had to make a utilization forecast, projecting the number of patients it would serve and predicting an average length of stay (ALOS) for projected patients. Seasons used national average lengths of stay for various diagnoses and causes of death in Snohomish County. The resulting ALOS was roughly 10 days or 18 percent higher than the Washington statewide ALOS that the Department used to establish need.

The Department concluded the ALOS Seasons used rendered its financial feasibility analysis unreliable, and it denied Seasons' application. Seasons argues that the Department

57759-3-II

erroneously assumed that the Washington statewide ALOS was the presumptive ALOS to be used in the financial feasibility analysis and that Seasons sufficiently explained how it arrived at its ALOS such that the Department's decision was arbitrary and capricious and not based on the evidence in the record. Seasons further argues that the Department failed to actually decide whether Seasons demonstrated financial feasibility because it did not consider whether Seasons' proposal would be financially feasible even with a lower ALOS.

We hold that it was permissible for the Department to treat the Washington statewide ALOS used to calculate need as a presumptively valid ALOS for purposes of determining financial feasibility. But the parties are also correct that the Washington ALOS is not the *only* permissible ALOS for establishing financial feasibility. Nevertheless, given the substantial deference we give to an agency's decision, we hold that the Department's rejection of Seasons' ALOS was supported by the evidence and not arbitrary and capricious.

As the applicant for a certificate of need, Seasons bore the burden of proving its financial feasibility; the Department had no obligation to undergo an analysis of Seasons' potential financial feasibility under an alternative ALOS. But the Department failed to notify Seasons of the specific issue relating to Seasons' ALOS within its screening of Seasons' application and failed to request supplemental information from Seasons to address this specific issue. Had the Department done so, Seasons could have provided further feasibility analysis and evidence at that stage to show whether its project was financially feasible even under a lower ALOS, including the lower statewide Washington ALOS that the Department had used to calculate need. As a result, the Department ultimately failed to address whether Seasons' proposal was financially feasible.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

57759-3-II

Although we affirm the Department's rejection of Seasons' ALOS, we remand for the Department to allow Seasons to supplement its application to show financial feasibility under the lower Washington statewide ALOS, subject to additional public comment under WAC 246-310-090(1)(a)(iii).

FACTS

I. BACKGROUND

In 1979, Washington began to regulate the number of providers entering the healthcare market. *Univ. of Wash. Med. Ctr. v. Dep't of Health*, 164 Wn.2d 95, 99, 187 P.3d 243 (2008). The legislature enacted the State Health Planning and Resources Development Act, chapter 70.38 RCW, creating the certificate of need program. RCW 70.38.015(2). The Department of Health administers the program. RCW 70.38.105(1). Designed to effectuate the goals and principles of the Act, the certificate of need program controls the number and type of healthcare services that are provided in a specific planning area. The program ensures that services and facilities are developed in a manner consistent with department priorities. The program also avoids unnecessary duplication of services in a specific planning area. *Overlake Hosp. Ass'n v. Dep't of Health*, 170 Wn.2d 43, 47, 239 P.3d 1095 (2010).

The Department may determine that additional health care services of a particular type are needed in a specific planning area. When determining whether additional hospice services are needed, the State's certificate of need program relies on the average length of hospice stay in Washington. WAC 246-310-290(1)(b). This regulation defines "average length of stay" as the average covered days of care per person for Washington as reported by Centers for Medicare and Medicaid Services (CMS). *Id.*

3

57759-3-II

Hospice providers wishing to enter into the Washington health care market must acquire a certificate of need from the Department before beginning operation. *King County Pub. Hosp. Dist. No. 2 v. Dep't of Health*, 178 Wn.2d 363, 366-67, 309 P.3d 416 (2013) (citing RCW 70.38.105(4)(a), .025(6)). The provider must submit an application to the Department to begin the certificate of need review process. WAC 246-310-090(1)(a), -290(3) tbl.A. The applicant must show the proposed project is needed, will foster containment of costs of health care, is financially feasible, and will meet the structure and process of care. *See* WAC 246-310-200(1)(a)-(d).

Under WAC 246-310-220, certificate of need applicants must demonstrate financial feasibility by showing that: (1) the immediate and long-range capital and operating costs of the project can be met; (2) the costs of the project will probably not result in an unreasonable impact on the costs and charges for health services; and (3) the project can be appropriately financed. The certificate of need application requires that applicants provide details including the number of patients projected to use the facility, information regarding who is paying for the patients' care, project costs, sources of financing, and operating revenue and expenses. Admin. R. (AR) at 537. Specifically, applicants must forecast the total number of unduplicated patients to be served per year for the first three years, the median length of stay, and the average daily census per year for the first three years. *Id.* Applicants must also show the methodology used to construct their utilization forecast, specifically providing "'[a]ll assumptions related to use rate, market share, intensity of service, and others.'" *Id.* (alteration in original).

Under WAC 246-310-090, the Department's review of an application begins with a screening period. During the screening period, if the Department determines an application is incomplete, WAC 246-310-090(1) provides that "notice from the department shall specifically

4

57759-3-II

identify the portions of the application where the information provided has been found to be insufficient or indefinite and request supplemental information needed to complete the application." WAC 246-310-090(1)(c). An applicant can then insist that the supplemental information be screened and the applicant must be given the opportunity to submit further information if the Department determines the application is still incomplete. WAC 246-310-090(2)(c)(i).

Moreover, the regulations contemplate that if the Department discovers "an unresolved pivotal issue" during its final review that requires further information, and the applicant agrees to an extension of the time period allowed for review, then the Department can request additional information from the applicant. WAC 246-310-090(1)(a)(iii). The Department must also provide public notice and an additional public comment period at that time. *Id.*

If the Department denies the application, the party requesting the certificate of need has the right to an adjudicative proceeding governed by the Administrative Procedure Act (APA), chapter 34.05 RCW. The proceeding is conducted by a health law judge, who reviews the application and issues a final order regarding approval or denial of the application. *King County Pub. Hosp.*, 178 Wn.2d at 365–66.

## II. SEASONS' CERTIFICATE OF NEED APPLICATION

In 2019, the State calculated a need for two new Medicare and Medicaid certified hospice agencies in Snohomish County through 2021. In January 2020, Seasons submitted an application for a certificate of need to provide hospice services in Snohomish County. At the time of its application, Seasons operated over 29 hospice programs across the country, but none in Washington.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

57759-3-II

In its application, Seasons used an average length of stay rate of 70.9 days in its utilization forecast. Seasons arrived at that value based on data compiled by the World Health Organization about numbers of deaths and their causes in Snohomish County. Seasons then forecast the ALOS for each particular diagnosis based on the 2017 national average lengths of stay published by the National Hospice and Palliative Care Organization. In contrast, at the time, the Department's certificate of need program used the average length of hospice stay for Washington patients statewide, 60.13 days, to calculate need under WAC 246-310-290(7)(b).

During the screening period, the Department asked Seasons a number of questions including a request to "summarize the assumptions used to project revenue and expenses and provide the bases for these assumptions." AR at 1819. The Department did not question Seasons' ALOS calculation or further question its financial feasibility utilizations that were based on that ALOS.

After the screening period closed, in the public comment period, a competitor hospice agency questioned Seasons' use of a higher ALOS than the Washington statewide ALOS that the Department used to calculate need. Seasons responded, explaining that its forecast assumed the national average lengths of stay by diagnosis, sourcing the National Hospice and Palliative Care Organization, and then applied those to the Snohomish County deaths by cause of death. Seasons contended this provided "a more precise estimate, rather than using one length of stay for all patients." AR at 2998. Seasons also explained that its patient enrollment would be strengthened by its offering of services not commonly offered by other hospice programs, lengthening its ALOS.

The Department denied Seasons' application. The Department ultimately agreed with Seasons' competitor that Seasons' use of the higher ALOS in its utilization forecast meant that

6

57759-3-II

financial feasibility was not adequately supported. The Department noted that although applicants are not required to use the same ALOS as the Department did, the deviation here was more than 10 days. "'[A] deviation . . . on this scale should be fully explained in the context of the market that they propose to serve. This is a significant increase and the rationale for this assumption is not entirely described or supported in the application.'" AR at 539.

Seasons requested a review hearing. At the hearing, Seasons argued that its ALOS was reasonable and that the Department could have assessed Seasons' financial feasibility based on the information contained in its application even if the Department rejected Seasons' ALOS. Seasons attempted to argue that even under a lower ALOS like the one the Department used to calculate need, its net income by year three would remain sufficient to meet financial feasibility. The Department objected, arguing that Seasons was precluded from introducing new evidence at that stage of the proceedings. The health law judge sustained the Department's objection, "finding that this evidence isn't of consequence to determining the approval or denial of the application." AR at 3450. Thus, Seasons was not permitted to present evidence or argument at the hearing about whether its hospice project was financially feasible even under a lower ALOS.

The Department's final order found "Seasons' utilization assumptions are simply too large to meet the requirements of WAC 246-310-220 without further reasonable explanation." AR at 539. The Department entered no finding or conclusion addressing whether Seasons' proposed project would be financially feasible under a lower ALOS.

Seasons petitioned for review in superior court, and the superior court transferred the case to our court under RCW 34.05.518.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

57759-3-II

ANALYSIS

I. LEGAL PRINCIPLES

The APA standards of review apply to certificate of need cases. RCW 70.38.115(10)(a); *Providence Hosp. of Everett v. Dep't of Soc. & Health Servs.*, 112 Wn.2d 353, 355, 770 P.2d 1040 (1989). The party seeking judicial review has the burden of demonstrating the invalidity of the contested administrative order. RCW 34.05.570(1)(a). In certificate of need cases, the agency decision is presumed correct and the challenger bears the burden of overcoming the presumption. *Overlake Hosp.*, 170 Wn.2d at 49-50.

We may substitute our interpretation of the law for that of the agency, but we defer to its interpretation, particularly where the agency has special expertise. *Providence*, 112 Wn.2d at 356.

> We do not retry factual issues and accept the administrative findings unless we determine them to be clearly erroneous, that is, the entire record leaves us with a definite and firm conviction that a mistake has been made. Important here is the corollary principle that the existence of credible evidence contrary to the agency's findings is not sufficient in itself to label those findings clearly erroneous.

*Univ. of Wash. Med. Ctr.*, 164 Wn.2d at 102-03. Relief may also be available if an agency order is arbitrary and capricious, meaning that "the decision is the result of willful and unreasoning disregard of the facts and circumstances." *Providence*, 112 Wn.2d at 356. We may also reverse an administrative order where the agency failed to follow a prescribed procedure or has not decided all issues requiring resolution. RCW 34.05.570(3)(c), (f). The challenger has the burden of showing the department misunderstood or violated the law, or made decisions without substantial evidence. We do not reweigh the evidence. *Providence*, 112 Wn.2d at 360.

Our scope of review under the arbitrary and capricious standard "is very narrow" and "'highly deferential'" to the agency, and the party challenging an agency decision must overcome

8

57759-3-II

a high burden. *Alpha Kappa Lambda Fraternity v. Wash. State. Univ.*, 152 Wn. App. 401, 418-22, 216 P.3d 451 (2009) (quoting *ARCO Prods. Co. v. Utils. & Transp. Comm'n*, 125 Wn.2d 805, 812, 888 P.2d 728 (1995)). "'[W]here there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous.'" *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 148 Wn.2d 887, 904, 64 P.3d 606 (2003) (alteration in original) (internal quotation marks omitted) (quoting *Rios v. Dep't of Lab.& Indus.*, 145 Wn.2d 483, 501, 39 P.3d 961 (2002)).

II. PRESUMPTIVELY VALID AVERAGE LENGTH OF STAY

Seasons argues that the Department erred by concluding the statewide Washington ALOS used to determine need is a presumptively valid ALOS for Snohomish County.

WAC 246-310-290(1)(b) defines "average length of stay" as "the average covered days of care per person for Washington state as reported by CMS." WAC 246-310-290 references ALOS twice—once in section 7 regarding how current hospice capacity shall be determined by the Department and once in section 8 regarding how the Department shall calculate the numeric need for hospice services in Washington. While WAC 246-310-290(10)(b) requires that applicants seeking a certificate of need demonstrate financial feasibility under WAC 246-310-220, WAC 246-310-220 does not reference ALOS.

Given that the Washington ALOS is the ALOS used by the Department to determine hospice capacity and need in a county, it is not unreasonable for the Department to treat it as a presumptively accurate ALOS for purposes of determining financial feasibility. Contrary to Seasons' contention on appeal, treating the Washington ALOS as a presumptively accurate ALOS and using that ALOS as a benchmark when evaluating the financial feasibility of an application is

9

57759-3-II

not tantamount to requiring applicants use that ALOS in utilization forecasts. *See* Appellant's Opening Br. at 22. The Department acknowledges that an alternative ALOS may be valid if it is fully supported. Br. of Resp't 26.

Evaluating an application in light of the Washington ALOS would simply make such utilization forecasts consistent with the Department's assessment of a county's need for hospice programs. The Department operates the certificate of need program, which ensures that services and facilities are developed in a manner consistent with department priorities and avoids unnecessary duplication. As such, determining the need for and general utilization of hospice services in a county falls within the Department's expertise, and the Department has determined that the Washington ALOS is an accurate figure to use in determining need for additional hospice programs. Accordingly, the Department's consideration of the Washington ALOS as a presumptively valid ALOS to be used in financial feasibility determinations for hospice programs is not unreasonable, much less arbitrary and capricious.

Both Seasons and the Department are correct when they conclude that an alternative ALOS may be used to determine financial feasibility if the alternative is adequately supported. As the Department accurately notes in its brief on appeal, the critical question in this case is whether Seasons proved its ALOS was reasonable and whether the Department properly concluded Seasons failed to establish its project was financially feasible. *See* Br. of Resp't at 26.

### III. SUBSTANTIAL EVIDENCE TO SUPPORT SEASONS' ALOS

Seasons argues that it sufficiently explained the reasonableness of its chosen ALOS and utilization assessments such that the Department's rejection of Seasons' ALOS was not supported

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

57759-3-II

by substantial evidence and was arbitrary and capricious. Based on the substantial deference we give to an agency's decision on appeal, we disagree.

We "accept the administrative findings unless we determine them to be clearly erroneous, that is, the entire record leaves us with a definite and firm conviction that a mistake has been made." *Univ. of Wash. Med. Ctr.*, 164 Wn.2d at 102-03. Moreover, it is not enough that there is room for two opinions based on the record; we give substantial deference to the Department's findings and conclusions. *Wash. Indep. Tel. Ass'n*, 148 Wn.2d at 904.

Seasons calculated its ALOS by using statistical data from the World Health Organization as to causes of death in Snohomish County, then it used the national average ALOS for those diagnoses. Seasons failed to establish that the hospice utilization of Snohomish County residents was similar to the national utilization rates. Seasons did not provide any data as to the utilization rates of Snohomish County residents with the current hospice providers, nor did it use any other length of stay data specific to Snohomish County or even Washington. There was a significant difference, about 10 days, between Seasons' ALOS and the Washington statewide ALOS. And there is evidence in the record that Washington patients tend to use hospice services for shorter times than patients in other states. Given the lack of connection in the record between Seasons' ALOS and Snohomish County, the Department's rejection of Seasons' chosen ALOS as unreliable is supported by the evidence in the record and it was not clearly erroneous.

IV. FINANCIAL FEASIBILITY DETERMINATION

Seasons separately argues that the Department failed to decide whether Seasons' project was financially feasible even with a lower ALOS. We agree that Seasons should have had an

11

57759-3-II

opportunity to present evidence and argument on this question, and the Department must then resolve this issue.

In deciding a certificate of need application, the Department is required to make findings on financial feasibility criteria. WAC 246-310-200(1). This includes a determination as to "whether the proposed project is financially feasible," including whether the "immediate and long-range capital and operating costs of the project can be met." WAC 246-310-200(1)(c), -220(1).

Here, the Department failed to decide all the issues requiring resolution by the agency when it denied Seasons' application based only on Seasons' ALOS as opposed to a reasoned determination that Seasons lacked financial feasibility. The Department made no findings whether Seasons' project could meet costs, relying simply on its rejection of Seasons' ALOS. A program analyst for the Department testified at the hearing that a lower ALOS would reduce expenses as well as revenue, but did not offer an opinion as to whether Seasons' could make a profit under a lower ALOS.

The Department obviously recognized that a lower ALOS than that proposed by Seasons would make a difference in the financial feasibility of the project. However, the Department never asked Seasons to demonstrate whether use of a lower ALOS, including the ALOS the Department used to calculate need, would impact Seasons' financial projections. This is particularly troubling given that the Department did not request additional financial feasibility analysis during the screening period. WAC 246-310-200(c) provides, "[T]he department *shall* identify the criteria and standards it will use during the screening of a certificate of need application." (emphasis added). "If an issue, which is pivotal to the decision . . . remain[ed] unresolved," the Department should have sought additional information from Seasons. WAC 246-310-160(2)(b). If the Department

12

57759-3-II

determined Seasons' ALOS was unreasonably high and that it needed to use a lower ALOS like the Washington statewide ALOS, the Department should have identified such issues during screening. Indeed, this is precisely what the screening period is for. Moreover, even if the Department identified the issue in the final review period, it could have sought more information to resolve its concern because the regulations allow the Department to reopen the comment period and allow supplemental evidence and public comment if there is an unresolved pivotal issue. WAC 246-310-090(1)(a)(iii).

In sum, the Department's final order found "Seasons' utilization assumptions are simply too large to meet the requirements of WAC 246-310-220 without further reasonable explanation." AR at 539. But the Department denied Seasons an opportunity, available under the regulations, to explain how it could meet the financial feasibility requirements under a lower ALOS like the Washington statewide ALOS.

The Department also failed to address in its decision whether Seasons' project was financially feasible. When an agency fails to decide an issue or supplies no reason for a decision, RCW 34.05.570(3)(f) provides authority for remand for further proceedings.

CONCLUSION

Accordingly, we remand to allow Seasons to supplement its application with evidence and explanation as to how it could meet financial feasibility requirements under a lower ALOS like the Washington statewide ALOS, as well as an opportunity for additional public comment under WAC 246-310-090(1)(a)(iii) on this issue. The Department must then make the financial feasibility determination.

13

57759-3-II

Glasgow, C.J.

We concur:

Lee, J.

Veljacic, J.