IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ARELY JIMENEZ, | ) | No. 79690-9-I |
| Appellant, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| WASHINGTON STATE DEPARTMENT OF HEALTH, | ) ) ) | UNPUBLISHED OPINION |
| | ) | FILED: August 5, 2019 |
| Respondent. | ) ) | |

SMITH, J. — Arely Jimenez appeals an order by the Department of Health (Department) finding that she engaged in the unlicensed practice of medicine and naturopathy and committed unprofessional conduct by doing so. She argues that the Department violated her constitutional rights and acted arbitrarily and capriciously in entering its findings and assessing sanctions against her. Finding no errors, we affirm.

## FACTS

Jimenez is a state-licensed marriage and family therapist (MFT). Jimenez obtained a doctor of natural health degree from Clayton College, a nonaccredited institution, which the Department does not recognize as a credential for obtaining a license to practice natural medicine. She also attended a nonaccredited online

school to study the practice of Ñedicine.[1] At the end of the coursework, the "American Ñedicine Licensing Board, Inc." issued Jimenez a license to practice Ñedicine and assured her that the license was valid to practice nationwide. Jimenez never obtained a license to practice medicine or naturopathy from the Department.

In December 2014, Jimenez opened Whidbey Naturals Alternative Medicine (Whidbey Naturals) with Clarence Hugh Jonson, a man she met at her church who represented himself as an attorney and board-certified naturopathic physician. From December 2014 through February 2015, Jimenez saw five patients and treated them for varying ailments, including high blood pressure, thyroid issues, celiac disease, insomnia, back pain, fatigue, tremors, and balance issues. She treated these patients with natural supplements, energy treatments, and diet and exercise recommendations.

Unfortunately for Jimenez, Jonson was a fraud. Unbeknownst to her, he did not have any license or credential to practice medicine or naturopathy in Washington. The Department received two complaints about Whidbey Naturals and opened an investigation. On January 2, 2015, investigators Mitchell Anderson and Kathleen Mills posed as husband and wife during an appointment with Jimenez, and Jimenez stated that she could help Mills with her fibromyalgia and chronic fatigue symptoms. When Anderson and Mills dropped by without an appointment on February 5, 2015, Jimenez told them that she could treat their

---

[1] Beverly Jackson, who issued Jimenez's doctorate of Ñedicine degree, described Ñedicine as a branch of alternative medicine that is based on quantum electrodynamics and quantum physics.

2

fictional son's posttraumatic stress disorder. Oak Harbor police arrested Jimenez on February 17, 2015, for practicing medicine without a license.

After a hearing, the Department issued an initial order finding that Jimenez engaged in the unlicensed practice of medicine and naturopathy and that her actions constituted unprofessional conduct. It issued a permanent cease and desist order, imposed $5,000 in sanctions, and placed her MFT license on probation until the fines were paid in full. Jimenez appealed the initial order and a review officer affirmed and issued findings of fact, conclusions of law, and a final order. The trial court affirmed the Department's final order. Jimenez appeals to this court.

## UNPROFESSIONAL CONDUCT

Jimenez argues that the Department acted arbitrarily and capriciously in accusing her of unprofessional conduct under RCW 18.130.180. We disagree.

"The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs judicial review of agency decisions." Faghih v. Dental Quality Assur. Comm'n, 148 Wn. App. 836, 842, 202 P.3d 962 (2009). "We review agency action from the same position as the superior court and review the administrative record rather than the superior court's findings or conclusions." Crosswhite v. Dep't of Soc. & Health Servs., 197 Wn. App. 539, 548, 389 P.3d 731, review denied, 188 Wn.2d 1009 (2017).

"To find an agency's decision to be arbitrary and capricious we must conclude that the decision is the result of willful and unreasoning disregard of the facts and circumstances." Providence Hosp. of Everett v. Dep't of Soc. & Health

Servs., 112 Wn.2d 353, 356, 770 P.2d 1040 (1989). "Judging whether the [agency's] decision was arbitrary and capricious requires an evaluation of the evidence produced at the hearing." Pierce County Sheriff v. Civil Serv. Comm'n for Sheriff's Emps., 98 Wn.2d 690, 695, 658 P.2d 648 (1983). "The scope of court review should be very narrow, however, and one who seeks to demonstrate that action is arbitrary and capricious must carry a heavy burden." Pierce County Sheriff, 98 Wn.2d at 695. "Findings of fact from the agency's final order are reviewed under the substantial evidence test and will be upheld if supported by a sufficient quantity of evidence to persuade a fair-minded person of the order's truth or correctness." Crosswhite, 197 Wn. App. at 548.

Under RCW 18.130.180(1), "[t]he commission of any act involving moral turpitude, dishonesty, or corruption relating to the practice of the person's profession, whether the act constitutes a crime or not," constitutes unprofessional conduct. "The principal question that arises in applying this statute concerns the relationship between the practice of the profession and the conduct alleged to be unprofessional." Haley v. Med. Disciplinary Bd., 117 Wn.2d 720, 731, 818 P.2d 1062 (1991). "To serve as grounds for professional discipline under RCW 18.130.180(1), conduct must be 'related to' the practice of the profession . . . meaning that the conduct must indicate unfitness to bear the responsibilities of, and to enjoy the privileges of, the profession." Haley, 117 Wn.2d at 731.

Here, the Department found that

> [re]spondent's conduct in falsely holding herself out as a licensed naturopath was an act of dishonesty. Her practice of medicine without a license raises concerns that she may use her professional position to harm members of the public (in this case, her clients or

4

patients). Respondent's conduct also tends to lower the standing of the marriage and family therapy profession in the eyes of the public. Therefore, Respondent's conduct meets the definition of moral turpitude.

Jimenez takes issue with the term of art "moral turpitude." Even though she does not assign error to the Department's finding on appeal, she argues that she did not commit moral turpitude because her "intent has always been to do good by others," she believed her Ñedicine license was valid, she "believes in doing good works," and she closed her counseling practice. Even so, substantial evidence supports the Department's finding that Jimenez held herself out as a licensed naturopath when she had no such license. Specifically, Jimenez sent an e-mail to Premera Blue Cross to update her contact information with that insurance provider and stated, "I am also a licensed Naturopath." Additionally, both Anderson and Mills testified that during their undercover investigation, Jimenez held herself out to them as a naturopathic doctor. This is substantial evidence that she falsely held herself out as a licensed naturopath, conduct that was dishonest and constituted unprofessional conduct. Therefore, the Department's finding that she violated RCW 18.130.180(1) was not arbitrary and capricious.

Jimenez argues that reversal of the Department's final order is necessary because the trial court "acknowledged that charging Appellant with [RCW] 18.130.180(1) was abusive." But the trial court simply opined that sometimes "the law uses the worst terms possible to describe conduct" and that was true of the term "moral turpitude" to describe dishonest behavior. The trial court held that the Department's finding that Jimenez committed unprofessional

5

conduct was supported by substantial evidence. The trial court's comment does not require reversal.

Jimenez also argues that none of her former clients testified that she held herself out as a naturopath or a doctor of medicine. But given Jimenez's e-mail to Premera Blue Cross and the testimony by Anderson and Mills that Jimenez held herself out as a naturopathic doctor to them, there was substantial evidence that she held herself out as a naturopathic doctor despite the absence of testimony from other clients.

Jimenez asserts that Anderson and Mills lied and that the e-mail to Premera Blue Cross was altered. But because the Department's hearing officer was in the best position to observe the evidence and witness testimony, we do not weigh the credibility of witnesses or substitute our judgment for the agency's findings of fact. Port of Seattle v. Pollution Control Hr'gs Bd., 151 Wn.2d 568, 588, 90 P.3d 659 (2004). Therefore, this assertion does not warrant reversal.

Finally, Jimenez argues that application of RCW 18.130.180 to her constitutes a violation of RCW 34.05.570(2), which addresses judicial review of the validity of an agency rule. But because the Department found that Jimenez violated RCW 18.130.180 in an agency order and not during a rule-making process, RCW 34.05.570(2) does not apply.

## SANCTIONS

Jimenez argues that the sanctions imposed by the Department should be reversed. We disagree.

6

Under RCW 18.71.021, "[n]o person may practice or represent himself or herself as practicing medicine without first having a valid license to do so." A person practices medicine if she "[o]ffers or undertakes to diagnose, cure, advise, or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, by any means or instrumentality." RCW 18.71.011(1). RCW 18.130.190(3) authorizes the Department to "impose a civil fine in an amount not exceeding one thousand dollars for each day upon which the person engaged in unlicensed practice of a business or profession for which a license is required."

Here, the review officer found that Jimenez "diagnosed, advised and treated Patients C, D, E, F, and G for medical conditions such as high blood pressure, thyroid issues, celiac disease, tremors, back pain, possible kidney issues, and depression." This finding is supported by each patient's records and the testimony of patients D, E, F, and G, which constitute substantial evidence to support the finding. The Department ordered Jimenez to pay a $5,000 administrative fine: $1,000 for each of the five patients she treated.

Jimenez argues that the amount of the fine was excessive because she has not worked since February 2015 due to the administrative proceedings and health issues caused by the stress of those proceedings. While we acknowledge that the fine may pose a financial burden to her, we can reverse only if the Department's decision to impose it was arbitrary and capricious. Because the fine was authorized by statute and did not did not exceed the amount delimited by the statute, we cannot hold that it was arbitrary and capricious.

For the first time in her reply brief, Jimenez argues that there is no evidence that she practiced medicine. But she does not address the actions described in RCW 18.71.011(1), only the actions in RCW 18.71.011(2)-(4). Because there is substantial evidence that Jimenez took some of the actions described in RCW 18.71.011(1), her argument is not persuasive.

CONSTITUTIONAL VIOLATIONS

Jimenez argues that her constitutional rights were violated at various times throughout the investigation and administrative process and reversal is necessary. We disagree.

Constitutional questions are issues of law and are reviewed de novo. McDevitt v. Harborview Med. Ctr., 179 Wn.2d 59, 64, 316 P.3d 469 (2013).

First, Jimenez argues that the Oak Harbor police violated her constitutional rights when they arrested her. Because this action involves an administrative proceeding between Jimenez and the Department and not a criminal proceeding or a civil lawsuit under 42 U.S.C. § 1983, the actions of the Oak Harbor police, however offensive to Jimenez, are not properly before this court. Therefore, we decline to address them as a basis for reversing the Department's final order.

Next, Jimenez argues that the Department violated her Fourteenth Amendment due process right to a fair trial by denying her rights under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. She claims that she was denied her right to present a defense under the Sixth Amendment and article I, section 22 when the hearing

8

officer failed to issue subpoenas to three witnesses and when the hearing officer excluded some of her exhibits at the hearing. She also argues that her Sixth Amendment right to effective assistance of counsel was violated. We note that both the Sixth Amendment and article I, section 22 apply to only criminal prosecutions and Jimenez's probation and fine is a civil penalty, not a criminal punishment. See Chmela v. Dep't of Motor Vehicles, 88 Wn.2d 385, 392, 561 P.2d 1085 (1977) (article I, section 22 and the Sixth Amendment are inapplicable in civil cases). Therefore, her due process rights were not violated because she is not entitled to protection under the Sixth Amendment or article I, section 22. Any grievances Jimenez has against her attorney must proceed as a separate malpractice claim.

Jimenez also argues that the Department's final order violates her First Amendment right to list her accomplishments as a doctor of natural health and of Ñedicine. But the Department has not restricted Jimenez's right to list her degrees among her accomplishments. Rather, it issued a cease and desist order that restricted her from practicing medicine and naturopathy without a license. Because Jimenez does not have a license to practice medicine or naturopathy, the Department did not violate her First Amendment rights by issuing the cease and desist letter.

Finally, Jimenez argues that the Department has violated her right to freedom of religion under the First Amendment to the United States Constitution and article I, section 11 because her practice of Ñedicine was related to her religious beliefs. Article I, section 11 "parallels the First Amendment's religious

Establishment and Free Exercise Clauses." Open Door Baptist Church v. Clark County, 140 Wn.2d 143, 151, 995 P.2d 33 (2000). "If government action burdens the exercise of religion, but the State demonstrates that it has a compelling interest in enforcing its enactment, that interest will justify the infringement of First Amendment rights." First Covenant Church of Seattle v. City of Seattle, 120 Wn.2d 203, 222, 840 P.2d 174 (1992). "[C]ompelling interests are based in the necessities of national or community life such as clear threats to public health, peace, and welfare." Munns v. Martin, 131 Wn.2d 192, 200, 930 P.2d 318 (1997). Here, even assuming that the Department's actions have infringed on Jimenez's right to freedom of religion, the Department has a compelling public health and welfare interest in limiting the practice of medicine and naturopathy to individuals licensed by the Department. To the extent that Jimenez's practice of Ñedicine without a Washington license burdened her exercise of religion, the Department's interest in public health and safety justified any infringement of her constitutional rights.

For the first time in her reply brief, Jimenez argues that the Department violated her due process rights by notifying insurance companies about the charges against her before a final order was issued. Also for the first time in her reply, she argues that the Department violated her due process rights because it did not apply a clear and convincing standard of proof to the evidence presented. But because these issues were raised in her reply brief and there was no opportunity for the Department to respond, we decline to consider them. RAP 10.3(c).

## TRIAL COURT PROCEEDINGS

Jimenez argues that the trial court erred during its review of the Department's final order. But any errors by the trial court do not affect our review.

As the reviewing court, we sit in the same position as the superior court and apply the APA standards directly to the record before the agency. King County Pub. Hosp. Dist. No. 2 v. Dep't of Health, 178 Wn.2d 363, 372, 309 P.3d 416 (2013). "[W]e do not give deference to the superior court's rulings." Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008).

Jimenez argues that the trial court erred both in granting the Department's motion to strike exhibits attached to her briefing and in considering an unpublished federal court order attached as an appendix to the Department's brief. Additionally, Jimenez argues that the trial court misstated the record when it said that she had nine clients, rather than the actual number of five. Finally, she argues that the trial court erred in concluding that she was not really Jonson's victim. The trial court did not actually say that Jimenez was not a victim. Even assuming it did, because we apply the APA standards directly to the administrative record and do not give deference to the superior court's rulings, none of these alleged errors affect our analysis on appeal and they are not a basis for reversal.

We affirm.

WE CONCUR:

_____

_____

Smith, J.

_____

Mann, A.C.J.